REPORTS

OF THE

# UNITED STATES TAX COURT

B.V. BELK, JR., AND HARRIET C. BELK, PETITIONERS *v*.
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 5437–10.          Filed January 28, 2013.

In 2004 Ps contributed a conservation easement on 184.627 acres of a golf course to a qualified organization. The conservation easement agreement permitted the parties, by agreement and subject to certain restrictions, to change what real property was subject to the conservation easement. Ps claimed a charitable contribution deduction on their 2004 Federal income tax return. I.R.C. sec. 170 allows a deduction for a "qualified conservation contribution". A qualified conservation contribution requires a contribution of a qualified real property interest. I.R.C. sec. 170(h)(1)(A). A qualified real property interest includes a restriction granted in perpetuity on the use which may be made of the real property. I.R.C. sec. 170(h)(2)(C). *Held*: I.R.C. sec. 170(h)(2)(C) precludes the deduction because Ps did not donate an interest in real property subject to a use restriction granted in perpetuity. The interest in real property was not subject to a use restriction granted in perpetuity because the conservation easement agreement permitted Ps to remove real property from the coverage of the conservation easement.

*David M. Wooldridge*, *Ronald A. Levitt*, and *Gregory P. Rhodes*, for petitioners.
*Scott L. Little*, for respondent.

VASQUEZ, *Judge*: Respondent determined deficiencies of $806,375, $784,678, and $491,239 in petitioners' Federal

1

income tax for 2004, 2005, and 2006, respectively. The issues for decision after partial settlement[1] are: (1) whether petitioners are entitled to a charitable contribution deduction with respect to the conservation easement they granted to Smoky Mountain National Land Trust (SMNLT);[2] and (2) if petitioners are entitled to a charitable contribution deduction, the amount of the deduction.[3]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the stipulation of settled issues, and the attached exhibits are incorporated herein by this reference. At the time petitioners filed their petition, they lived in North Carolina.

*Background of the Easement Property*

During the mid-1990s petitioners accumulated approximately 410 acres of land straddling Union County, North Carolina, and Mecklenburg County, North Carolina. The land is near Charlotte, North Carolina. In February 1996 petitioners transferred the land to their newly formed company, Olde Sycamore, LLC (Olde Sycamore).[4] On that property Olde Sycamore developed a residential community that comprised 402 single-family home lots[5] (residential development) and built Olde Sycamore Golf Plantation (golf course).

---

[1] In the stipulation of settled issues, petitioners and respondent agreed that petitioners are entitled to deductions for cash charitable contributions of $18,831 and $65,819 for 2004 and 2005, respectively, and a noncash charitable contribution of $90 for 2004 that was not claimed on their 2004 amended return. On reply brief respondent concedes that Olde Sycamore, LLC, is entitled to deduct land trust expenses of $113,297 for 2004 and therefore concedes that petitioners' share of income from Olde Sycamore, LLC, for 2004 does not need to be increased.

[2] SMNLT has since changed its name to Southwest Regional Land Conservancy.

[3] The remaining adjustment to petitioners' itemized deductions is computational and will be resolved by our holding herein.

[4] During the years at issue, B.V. Belk, Jr., owned 99% of Olde Sycamore and Harriet Belk owned 1%.

[5] As of December 2004 75% of the lots had been sold and many of those were developed into single-family residences.

*Golf Course*

The golf course is an 18-hole golf course on 184.627 acres of land. The golf course is a semiprivate golf course; it has members but allows the public to play for a fee. The golf course was built in the middle of the residential development. The entire golf course is not contiguous but lies in clusters throughout the residential development (e.g., holes 2, 3, and 4 are grouped together, while hole 11 is by itself).

*Conservation Easement*

In December 2004 Olde Sycamore executed the conservation easement agreement at issue with SMNLT, a nonprofit section 501(c)(3) organization.[6] The conservation easement covers the 184.627 acres of land on which the golf course is located. On December 30, 2004, the conservation easement was recorded in both Mecklenburg County, North Carolina, and Union County, North Carolina.

The conservation easement agreement states that the golf course possesses "recreational, natural, scenic, open space, historic, and educational values".[7] Except for the rights reserved, the conservation easement agreement prohibits the golf course from being used for residential, commercial, institutional, industrial, or agricultural purposes. The conservation easement agreement specifically provides that a golf course may be maintained on the easement property.

The conservation easement agreement permits petitioners and SMNLT to change what property is subject to the conservation easement. Specifically, Article III: Reserved Rights of the conservation easement agreement states the following:

> 3. Owner may substitute an area of land owned by Owner which is contiguous to the Conservation Area for an equal or lesser area of land comprising a portion of the Conservation Area, provided that:
>   a. In the opinion of Trust:

---

[6] All section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[7] Petitioners have stipulated that the easement property does not possess any historic value. At trial James Wright, executive director of SMNLT, explained that the statement regarding the historic values of the easement property is a blanket statement that covers the conservation values in sec. 170(h).

(1) the substitute property is of the same or better ecological stability as that found in the portion of the Conservation Area to be substituted;

(2) the substitution shall have no adverse affect on the conservation purposes of the Conservation Easement or on any of the significant environmental features of the Conservation Area described in the Baseline documentation;

(3) the portion of the Conservation Area to be substituted is selected, constructed and managed so as to have no adverse impact on the Conservation Area as a whole;

(4) the fair market value of Trust's conservation easement interest in the substituted property, when subject to this Conservation Easement, is at least equal to or greater than the fair market value of the Conservation Easement portion of the Conservation Area to be substituted; and

(5) Owner has submitted to Trust sufficient documentation describing the proposed substitution and how such substitution meets the criteria set forth in subsections (1)–(4) above of this Section B.3.a. of this Article III.

b. Trust shall render an opinion upon a proposed substitution request of the Owner within sixty (60) days of receipt of notice. A favorable opinion of Trust shall not be unreasonably withheld. However, should Trust render an unfavorable opinion, Trust shall provide a written explanation to Owner as to the reasoning and facts used in reaching such opinion within ten (10) days of the decision. In addition, Trust will undertake a reasonable good faith effort to help Owner identify property for such trade in which Trust believes will meet the above requirements but also accomplish the Owner's objectives.

c. No such substitution shall be final or binding upon Trust until made a subject of an amendment[8] to this Conservation Easement acceptable to and executed by Owner and Trust and recorded in the Register of Deeds Office of Mecklenburg County and/or Union County. The amendment shall include, among other things, a revised Conservation Easement Plan or portion thereof showing the portions of the Conservation Area that are to be removed from the coverage of this Conservation

---

[8] Article VIII: Miscellaneous of the conservation easement agreement states the following with respect to amendment:

Owner and Trust recognize that circumstances could arise which would justify the modification of certain of the restrictions contained in this Conservation Easement. To this end, Trust and the legal owner or owners of the Conservation Area at the time of amendment shall mutually have the right, in their sole discretion, to agree to amendments to this Conservation Easement which are not inconsistent with the Conservation Values or the purposes of this instrument; provided, however, that Trust shall have no right or power to agree to any amendments hereto that would result in this Conservation Easement failing to qualify as a valid conservation agreement under the "Act," as the same may be hereafter amended, or as a qualified conservation contribution under Section 170(h) of the Internal Revenue Code and applicable regulations.

Easement and the equal or greater area of contiguous land of the Owner to be made part of the Conservation Area, and thus, subject to the Conservation Easement.

### Baseline and Monitoring Reports

In connection with the easement biologist Karin Heiman,[9] on behalf of SMNLT, prepared the report "Olde Sycamore Golf Plantation Easement Documentation Report Baseline Natural Areas & Botanical Inventory" dated November 2004 (baseline report). The purpose of the baseline report was to establish the condition of the property at the time of the conservation easement. The baseline report describes the property subject to the easement as "maintained golf course land". In addition to the baseline report Ms. Heiman prepared annual monitoring reports for SMNLT to verify the condition of the golf course and that the conservation easement was not being violated. Each year Ms. Heiman found Olde Sycamore to be in compliance with the conservation easement.

### Petitioners' Appraisal

On behalf of petitioners and Olde Sycamore, F. Bruce Sauter prepared the report "Complete Appraisal Self-Contained Report of 184.627-Acre Conservation Easement" dated December 20, 2004. In the appraisal Mr. Sauter determined the value of the golf course before the easement to be $10,801,000. Mr. Sauter reached this amount after concluding the highest and best use of the property was a medium- and high-density residential development. After the easement Mr. Sauter determined the highest and best use of the property was use as a golf course and that its value was $277,000.

### Tax Return

Olde Sycamore claimed a $10,524,000 charitable contribution deduction on its 2004 Form 1065, U.S. Return of Partnership Income, for its contribution of the conservation easement to SMNLT. Petitioners attached Form 8283, Noncash Charitable Contributions, to Olde Sycamore's partnership

---

[9] Ms. Heiman is an independent contractor and does not work exclusively for SMNLT.

return. The Form 8283 listed the appraised fair market value of the conservation easement as $10,524,000.

Petitioners claimed a $10,524,000 charitable contribution deduction on their Schedule A, Itemized Deductions, for 2004.[10] Petitioners deducted $2,291,708 in 2004 and carried forward the remainder to 2005 and 2006.

By a notice of deficiency, the Internal Revenue Service (IRS) disallowed the charitable contribution deduction (and made other adjustments) and determined deficiencies in petitioners' 2004, 2005, and 2006 Federal income tax.

### OPINION

### I. *Burden of Proof*

The Commissioner's determinations in the notice of deficiency are presumed correct, and taxpayers bear the burden of proving that the Commissioner's determinations are incorrect. *See* Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving his entitlement to the claimed deduction. Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934).

### II. *Qualified Conservation Contribution*

#### A. *Overview*

Taxpayers may deduct the values of any charitable contributions made during the tax year pursuant to section 170(a)(1). Generally, taxpayers are not entitled to deduct gifts of property that consist of less than the taxpayers' entire interest in that property. Sec. 170(f)(3). However, taxpayers are permitted to deduct the value of a contribution of a partial interest in property that constitutes a "qualified conservation contribution" as defined in section 170(h)(1).

---

[10] Olde Sycamore's charitable contribution passed through to petitioners under sec. 702(a)(4). The Court assumes that respondent determined Olde Sycamore was a small partnership within the meaning of the small partnership exception, *see* sec. 6231(a)(1)(B)(i), and that it was not subject to the unified partnership audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97–248, sec. 402(a), 96 Stat. at 648. Even if that determination were erroneous, the TEFRA provisions would not apply. *See* sec. 6231(g)(2).

Sec. 170(f)(3)(B)(iii). The policy for allowing this exception and the reasons for limiting the exception are discussed in the legislative history underlying section 170(h):

> The committee believes that the preservation of our country's natural resources and cultural heritage is important, and the committee recognizes that conservation easements now play an important role in preservation efforts. The committee also recognizes that it is not in the country's best interest to restrict or prohibit the development of all land areas and existing structures. Therefore, the committee believes that provisions allowing deductions for conservation easements should be directed at the preservation of unique or otherwise significant land areas or structures. * * * [S. Rept. No. 96–1007, at 9 (1980), 1980–2 C.B. 599, 603.]

For a contribution to constitute a qualified conservation contribution, the taxpayer must show that the contribution is (1) of a "qualified real property interest" (2) to a "qualified organization" (3) "exclusively for conservation purposes." Sec. 170(h)(1). Respondent argues that petitioners are not entitled to a deduction because the contribution was not of a qualified

real property interest [11] and it was not exclusively for conservation purposes. [12]

### B. *Qualified Real Property Interest*

The Court has not previously addressed what constitutes a "qualified real property interest". In the prior cases involving conservation easements either the IRS has conceded the

---

[11] On brief petitioners state that it is uncontested whether the "Easement property was a qualified real property interest". However, when listing what issues are contested petitioners state: "The donation was 'exclusively' for conservation purposes, including being granted in perpetuity. (*See* Section 170(h)(2)(C)) (perpetuity contested)". Thus, even though petitioners state that it is uncontested whether there is a qualified real property interest, they acknowledge that it is contested whether sec. 170(h)(2)(C) is satisfied. Petitioners' contribution must meet all the requirements of sec. 170(h)(2)(C) in order to be a qualified real property interest.

Moreover, we find this issue to be contested because we have found nothing in the record that establishes respondent conceded it. In the notice of deficiency, the Internal Revenue Service disallowed petitioners' deduction for the conservation easement because "[i]t has not been established that all the requirements of IRC Section 170 and the corresponding Treasury Regulations have been satisfied to enable you to deduct the noncash charitable contribution of a qualified conservation contribution."

In his pretrial memorandum and his original brief respondent argues that petitioners failed to satisfy the perpetuity requirement of sec. 170(h)(2)(C). On brief respondent states: "Petitioners are not entitled to a deduction with respect to the donation of the easement, because petitioners have failed to establish that the easement protects the subject property in perpetuity." Respondent combined his sec. 170(h)(2)(C) argument with his argument that petitioners also failed to satisfy the perpetuity requirement of sec. 170(h)(5) (relating to the requirement that the conservation purpose of the conservation easement be protected in perpetuity).

Furthermore, on reply brief respondent objected to petitioners' proposed findings of fact regarding the property being protected in perpetuity. For example, petitioners' proposed finding of fact No. 61 states: "Under the conservation Easement Deed, Olde Sycamore granted to SMNLT a restriction over the Conservation Easement Property in perpetuity. The Conservation Easement Deed gives SMNLT a real property right and interest, which was immediately vested in SMNLT." Respondent objected "to the extent petitioners contend that SMNLT was granted an interest in the subject property in perpetuity, because it is a conclusory statement, inappropriate for inclusion in a finding of fact, and is not supported by the record."

[12] Because we ultimately hold that petitioners have not satisfied the first requirement, there is no need to consider the third requirement or the easement's value.

issue [13] or the Court has disallowed the deduction on other grounds. [14]

Section 170(h)(2) defines "qualified real property interest" as:

[A]ny of the following interests in real property:
(A) the entire interest of the donor other than a qualified mineral interest,
(B) a remainder interest, and
(C) a restriction (granted in perpetuity) on the use which may be made of the real property.

The regulations provide the following with respect to section 170(h)(2)(C):

A "perpetual conservation restriction" is a qualified real property interest. A "perpetual conservation restriction" is a restriction granted in perpetuity on the use which may be made of real property—including, an easement or other interest in real property that under state law has attributes similar to an easement (e.g., a restrictive covenant or equitable servitude). * * * [Sec. 1.170A–14(b)(2), Income Tax Regs.]

Petitioners did not donate their entire interest in real property or a remainder interest in real property. Therefore, petitioners must satisfy section 170(h)(2)(C), which respondent argues they have not. Respondent argues that

---

[13] *See, e.g.*, *Mitchell v. Commissioner*, 138 T.C. 324, 329 (2012) (IRS concession that there was a contribution of a qualified real property interest); *Glass v. Commissioner*, 124 T.C. 258, 280 (2005) (IRS concession that the conservation easements were qualified real property interests), *aff'd*, 471 F.3d 698 (6th Cir. 2006); *Butler v. Commissioner*, T.C. Memo. 2012–72 (noting parties' agreement that the contributions were of qualified real property interests); *Carpenter v. Commissioner*, T.C. Memo. 2012–1 (IRS concession that there was a contribution of a qualified real property interest).

[14] *See, e.g.*, *Turner v. Commissioner*, 126 T.C. 299, 312 n.9 (2006) (disallowing the deduction because it was not exclusively for conservation purposes and not determining whether there was a qualified real property interest); *Wall v. Commissioner*, T.C. Memo. 2012–169 (disallowing the deduction because it was not exclusively for conservation purposes and not determining whether there was a qualified real property interest); *1982 East, LLC v. Commissioner*, T.C. Memo. 2011–84 (disallowing the deduction because it was not exclusively for conservation purposes and not determining whether there was a qualified real property interest); *Satullo v. Commissioner*, T.C. Memo. 1993–614 (disallowing the deduction because it was not exclusively for conservation purposes and assuming without deciding that the easement was a qualified real property interest), *aff'd without published opinion*, 67 F.3d 314 (11th Cir. 1995).

the interest in real property petitioners donated is not subject to a use restriction granted in perpetuity because the conservation easement agreement permits substitutions. As discussed *supra* p. 3, under the terms of the conservation easement, if SMNLT approves and subject to certain restrictions, petitioners can change what property is subject to the conservation easement. Respondent characterizes petitioners' easement as a "floating easement" and argues that a conservation easement that does not relate to a specific piece of property cannot be a qualified conservation contribution.

The most basic tenet of statutory construction is to begin with the language of the statute itself. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). The statutory text is the most persuasive evidence of Congress' intent. *United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 542–543 (1940). When the plain language of the statute is clear and unambiguous, that is where the inquiry should end. *Ron Pair Enters., Inc.*, 489 U.S. at 241. Additionally, it is a well-settled rule of statutory construction that deductions should be narrowly construed. *INDOPCO, Inc. v. Commissioner*, 503 U.S. at 84.

As discussed above, in order for a donation to constitute a qualified conservation contribution, section 170(h)(2)(C) requires that the contribution be an interest in real property that is subject to a use restriction granted in perpetuity. The real property in which petitioners have donated an interest is the golf course. [15] Petitioners agreed to restrict their use of the golf course; specifically, petitioners agreed not to develop the golf course. However, because the conservation easement agreement permits petitioners to change what property is subject to the conservation easement, the use restriction was not granted in perpetuity. [16] Petitioners did

_____

[15] Petitioners claimed a $10.5 million deduction for restricting their use of the golf course. Petitioners determined the value of the deduction by comparing "the market values of the 184.627-acres immediately before and after the establishment of the easement". Petitioners' appraisal did not address their ability to substitute land.

[16] We note that petitioners' right to change the real property subject to the conservation easement is not limited to circumstances where continued use of the golf course has become impossible or impractical. Sec. 1.170A–14(c)(2), Income Tax Regs., provides that

[w]hen a later unexpected change in the conditions surrounding the

not agree never to develop the golf course. Under the terms of the conservation easement, petitioners are able to remove portions of the golf course and replace them with property currently not subject to the conservation easement. Thus, petitioners have not donated an interest in real property which is subject to a use restriction granted in perpetuity. To conclude otherwise would permit petitioners a deduction for agreeing not to develop the golf course when the golf course can be developed by substituting the property subject to the conservation easement.

Respondent combined his argument that the contribution was not a qualified real property interest with his argument that the conservation purpose was not protected in perpetuity.[17] As the following excerpt demonstrates, the Court has also combined its discussion of these requirements in prior cases:[18]

> A "qualified real property interest" must consist of the donor's entire interest in real property (other than a qualified mineral interest) or consist of a remainder interest, or of a restriction granted in perpetuity concerning way(s) the real property may be used. Sec. 170(h)(2). A restriction granted in perpetuity on the use of the property must be based upon legally enforceable restrictions (such as by recording the deed) that will prevent uses of the retained interest in the property that are inconsistent with the conservation purpose of the contribution. *See* sec.

property that is the subject of a donation under paragraphs (b)(1), (2), or (3) [relating to qualified real property interests] of this section makes impossible or impractical the continued use of the property for conservation purposes, the requirement of this paragraph will be met if the property is sold or exchanged and any proceeds are used by the donee organization in a manner consistent with the conservation purposes of the original contribution. * * *

While the regulations permit property to be substituted when continued use is impossible or impractical, there is nothing in the regulations to suggest that taxpayers may substitute property for other reasons. The conservation easement agreement in this case does not limit substitutions to circumstances where use is impossible or impractical but allows petitioners to substitute property for any reason.

[17] It appears petitioners may have also combined the perpetuity requirements. *See supra* note 11 (petitioners' citing sec. 170(h)(2)(C) when identifying whether conservation purpose protected in perpetuity as a contested issue).

[18] However, the Court did not address what constitutes a qualified real property interest in these cases. *See supra* p. 8.

> 1.170A–14(g)(1), Income Tax Regs. [*Turner v. Commissioner*, 126 T.C. 299, 311 (2006).]

*See also Glass v. Commissioner*, 124 T.C. 258, 276–277 (2005) (suggesting that section 1.170A–14(g)(1), Income Tax Regs., may be used to interpret section 170(h)(2)(C)), *aff'd*, 471 F.3d 698 (6th Cir. 2006); *Simmons v. Commissioner*, T.C. Memo. 2009–208 (using language similar to that in *Turner*), *aff'd*, 646 F.3d 6 (D.C. Cir. 2011). Both section 170(h)(2)(C) and (5) require perpetuity; however, they are separate and distinct requirements. Section 170(h)(2)(C) requires that the interest in real property donated by taxpayers be subject to a use restriction in perpetuity, whereas section 170(h)(5) requires that the conservation purpose of the conservation easement be protected in perpetuity.[19] Thus, section 170(h)(2)(C) relates to the real property interest donated and section 170(h)(5) relates to the conservation purpose.

Petitioners argue it does not matter that the conservation easement agreement permits substitution because it permits only substitutions that will not harm the conservation purposes of the conservation easement. However, as discussed above, the section 170(h)(5) requirement that the conservation purpose be protected in perpetuity is separate and distinct from the section 170(h)(2)(C) requirement that there be real property subject to a use restriction in perpetuity. Satisfying section 170(h)(5) does not necessarily affect whether there is a qualified real property interest.[20] Section 170(h)(2), as well as the corresponding regulations and the legislative history, when defining qualified real property interest does not mention conservation purpose. There is nothing to suggest that section 170(h)(2)(C) should be read to mean that the restriction granted on the use which may be made of the real property does not need to be in perpetuity if the conservation purpose is protected.

---

[19] Sec. 1.170A–14(g), Income Tax Regs., cited by *Turner*, relates to sec. 170(h)(5). *See Mitchell v. Commissioner*, 138 T.C. at 329 ("Section 170(h)(5)(A) provides that 'A contribution shall not be treated as exclusively for conservation purposes unless the conservation purpose is protected in perpetuity.' Section 1.170A–14(g), Income Tax Regs., elaborates on the enforceability-in-perpetuity requirement.").

[20] Similarly, whether a conservation purpose is protected in perpetuity would not affect whether SMNLT qualified as a "qualified organization" under sec. 170(h)(3).

We find it is immaterial that SMNLT must approve the substitutions. There is nothing in the Code, the regulations, or the legislative history to suggest that section 170(h)(2)(C) is to be read to require that the interest in property donated be a restriction on the use of the real property granted in perpetuity unless the parties agree otherwise. The requirements of section 170(h) apply even if taxpayers and qualified organizations wish to agree otherwise.

We also find it immaterial that SMNLT cannot agree to an amendment that would result in the conservation easement's failing to qualify as a qualified conservation contribution under section 170(h). The substitution provision states that a substitution is not final or binding on SMNLT until the conservation easement agreement is amended to reflect the substitution. We reject the argument that, because substitution is effected by amendment and the conservation easement agreement seemingly prohibits amendments not permitted by section 170(h), the conservation easement does not permit substitutions.

Here we have a conflict between a specific provision and a general provision in the conservation easement agreement. Petitioners' right to substitute property is a specific provision; it is one of the enumerated rights reserved in "Article III: Reserved Rights", and it contains several paragraphs with specific, detailed language. The amendment provision is a general provision; it is included in "Article VIII: Miscellaneous", and contains only one paragraph with broad, general language. Thus, we have a specific contract provision stating that substitution is permitted and a general provision which seemingly says substitution cannot be permitted because it is not permitted under section 170(h). It is a rule of law that "when general terms and specific statements are included in the same contract and there is a conflict, the general terms should give way to the specifics." *Wood-Hopkins Contracting Co. v. N.C. State Port Auth.*, 202 S.E.2d 473, 476 (N.C. 1974);[21] *see also Janow v. Commissioner*, T.C. Memo. 1996–289 ("There is no dispute with respect to the proposition that when two contract provisions are in apparent conflict, the specific provision overrides the more general provision."),

---

[21] We apply State law in interpreting the provisions of a contract. *Peco Foods, Inc. v. Commissioner*, T.C. Memo. 2012–18.

*aff'd without published opinion*, 172 F.3d 38 (2d Cir. 1996). Therefore, the general amendment provision must give way to the specific provision permitting substitution.

Furthermore, in interpreting a contract, the parties' intention controls. *Jones v. Palace Realty Co.*, 37 S.E.2d 906, 907 (N.C. 1946) ("The heart of a contract is the intention of the parties."); *Bueltel v. Lumber Mut. Ins. Co.*, 518 S.E.2d 205, 209 (N.C. Ct. App. 1999) ("The court is to interpret a contract according to the intent of the parties to the contract, unless such intent is contrary to law."). The intention of the parties "is to be gathered from the entire instrument, viewing it from its four corners." *Jones*, 37 S.E.2d at 907. We find petitioners and SMNLT did not intend for the amendment provision to prohibit substitutions. They specifically included the right to substitute real property as one of the reserved rights and placed specific requirements on SMNLT with respect to substitution. Particularly, SMNLT cannot unreasonably withhold its approval of a substitution, and it must make a reasonable good-faith effort to help petitioners identify property that is appropriate for substitution and accomplishes their objectives. It seems unlikely that petitioners and SMNLT would have placed such requirements on SMNLT if they thought the amendment provision prohibited substitutions. Furthermore, the detailed substitution provision does not limit the reasons for substitutions, [22] and there is nothing in it to suggest that petitioners and SMNLT intended substitutions to be limited to circumstances where continued use is impossible or impractical. [23] We find petitioners and SMNLT did not intend for the conservation easement agreement to prohibit substitutions or to limit substitutions to where continued use is impossible or impractical. To find otherwise would render the substitution provision meaningless, and such a result is contrary to the well-established rule of construction that "each and every part of the contract must be given effect, if this can be done by any fair or reasonable interpretation". *Davis v. Frazier*, 64 S.E. 200,

---

[22] Not only does the substitution provision not limit the reasons for substitutions; it also requires that SMNLT help petitioners identify property that meets "the Owner's objectives", whatever those objectives may be.

[23] *See supra* note 16.

202 (N.C. 1909). Thus, the conservation easement agreement permits substitution.

Petitioners have not satisfied section 170(h)(2)(C) and, therefore, are not entitled to a deduction for a qualified conservation contribution. We have considered all of petitioners' contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

*Decision will be entered under Rule 155.*