T.C. Memo. 2020-22

UNITED STATES TAX COURT

RAILROAD HOLDINGS, LLC,
RAILROAD LAND MANAGER, LLC, TAX MATTERS PARTNER, Petitioner
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11838-16.            Filed February 5, 2020.

P executed a conservation easement deed in favor of D, a charitable organization. The deed provided that, if the easement were ever extinguished and proceeds were to be allocated between P and D, then D "shall be entitled to a portion of the proceeds at least equal to the fair market value of the Conservation Easement * * * as of the date of this Conservation Easement", rather than being entitled to a proportionate share of the proceeds. P claimed a charitable contribution deduction for the contribution, and R disallowed the deduction.

<u>Held</u>: P is not entitled to the deduction because, as a result of the extinguishment provision, the conservation purpose of the easement was not "protected in perpetuity" within the meaning of I.R.C. sec. 170(h)(5)(A).

**[*2]**  <u>John P. Barrie</u>, for petitioner.

<u>Candace M. Williams</u>, for respondent.


MEMORANDUM OPINION


GUSTAFSON, <u>Judge</u>:  Petitioner in this case is Railroad Land Manager, LLC ("RLM"), the tax matters partner ("TMP") of Railroad Holdings, LLC ("Railroad Holdings").  In 2012 Railroad Holdings executed a deed declaring a conservation easement in favor of a tax-exempt charitable organization; and on its tax return for that year--Form 1065, "U.S. Return of Partnership Income"-- Railroad Holdings claimed, pursuant to section 170(h),[1] a charitable contribution deduction of $16 million.  By notice of final partnership administrative adjustment ("FPAA") dated March 15, 2016, the Commissioner disallowed the deduction and determined that penalties were applicable.  The Commissioner has now moved for partial summary judgment on the issue of whether (as he contends) Railroad Holdings was not entitled to the deduction because the easement failed to satisfy

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code ("26 U.S.C."; "the Code") in effect for the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Dollar amounts are rounded, and the precise amounts are undisputed in the parties' submissions.

[*3] the requirement of section 170(h)(5)(A) that the conservation purpose of the contribution be protected in perpetuity.[2] We hold that Railroad Holdings is not entitled to the deduction, and we will grant the Commissioner's motion.

## Background

The following facts are not in dispute.

### Railroad Holdings and its property

Railroad Holdings and its TMP, RLM, were formed and continue to exist as limited liability companies under the laws of the State of Georgia.

On January 28, 2008, Sage Mill Investment Property Two, Ltd. ("SMIP"), acquired 454 acres of land ("the subject property") in Aiken County, South Carolina, for about $4 million.

On December 17, 2012, SMIP transferred a 51% interest in 452 acres of the subject property to Railroad Manager, LLC (RR Manager), a South Carolina limited liability company wholly owned by SMIP. On that same date, the following occurred: (1) SMIP and RR Manager each contributed their respective

---

[2]Section 170(h) contains two "perpetuity" requirements--i.e., the requirement of section 170(h)(2)(C) that there be "a restriction (granted in perpetuity) on the use which may be made of the real property" (emphasis added), and the requirement of section 170(h)(5)(A) that "the conservation purpose * * * [be] protected in perpetuity" (emphasis added). The latter provision is the subject of the Commissioner's motion and this opinion.

[*4] interests in the subject property to the newly formed Railroad Holdings;

(2) RLM, the TMP, acquired .01% of RR Manager's interest in Railroad Holdings

in exchange for $100; (3) SMIP sold its 49% interest in Railroad Holdings to LCV

Fund XI, LLC ("LCV Fund"); (4) RR Manager sold 98.04% of its 50.99% interest

in Railroad Holdings to LCV Fund. When the dust settled, Railroad Holdings

owned the 452 acres; and Railroad Holdings was itself owned 98.99% by LCV

Fund, 1% by RR Manager, and .01% by RLM.

Deed of easement

On December 26, 2012, Railroad Holdings contributed a conservation

easement on the 452-acre parcel of the subject property to the Southeast Regional

Land Conservancy, Inc. ("SERLC"). For purposes of this opinion, we assume (in

favor of Railroad Holdings) that SERLC was a qualified organization to receive

such a contribution and that, apart from the issue addressed here, the easement

qualified as a charitable contribution deduction.

The deed of easement provides for the possible future circumstance in

which the easement might have to be extinguished and the property sold. As to

the distribution of proceeds in such a circumstance, the deed provides as follows

in article VI ("Miscellaneous"), part B ("Conservation Purpose"):

[*5]        (2)  This Conservation Easement gives rise to a real property right and interest immediately vested in SERLC.  For purposes of this Conservation Easement, the fair market value of SERLC's right and interest (which value shall remain constant) shall be equal to the difference between (a) the fair market value of the Conservation Area as if not burdened by this Conservation Easement and (b) the fair market value of the Conservation Area burdened by this Conservation Easement, as such values are determined as of the date of this Conservation Easement.  If a change in conditions makes impossible or impractical any continued protection of the Conservation Area for conservation purposes, the restrictions contained herein may only be extinguished by judicial proceeding.  Upon such proceeding, SERLC, upon a subsequent sale, exchange or involuntary conversion of the Conservation Area, shall be entitled to a portion of the proceeds at least equal to the fair market value of the Conservation Easement as provided above.  SERLC shall use its share of the proceeds in a manner consistent with the conservation purposes set forth in the Recitals herein.

        (3)  Whenever all or part of the Conservation Area is taken in exercise of eminent domain by public, corporate, or other authority so as to abrogate the restrictions imposed by this Conservation Easement, Owner and SERLC shall join in appropriate actions at the time of such taking to recover the full value of the taking and all incidental or direct damages resulting from the taking, which proceeds shall be divided in accordance with the proportionate value of SERLC's and Owner's interests as specified above.  All expenses, including attorneys' fees, incurred by Owner and SERLC in such action shall be paid out of the recovered proceeds to the extent not paid by the condemning authority.
        [Emphasis added.]

Article VI, part D ("Construction of Terms"), reads as follows:

This Conservation Easement shall be construed to promote the purposes of the Conservation Easement Act (S.C. Code §27-8-10, et seq.), which authorizes the creation of conservation easements for

[*6] purposes including those set forth in the recitals herein, and the conservation purposes of this Conservation Easement, including such purposes as are defined in Section 170(h)(4)(A) of the Internal Revenue Code. The parties recognize the Conservation Values, and have the common purpose of preserving these values. Any general rule of construction to the contrary notwithstanding, this Conservation Easement shall be liberally construed in favor of the grant to protect the Conservation Values and effect the policies and purposes of SERLC. If any provision in this Conservation Easement is found to be ambiguous, an interpretation consistent with its conservation purposes that would render the provision valid should be favored over any interpretation that would render it invalid. If any provision of this Conservation Easement is determined by final judgment of a court having competent jurisdiction to be invalid, such determination shall not have the effect of rendering the remaining provisions of this Conservation Easement invalid. The parties intend that this Conservation Easement, which is by nature and character primarily prohibitive (in that the Owner has restricted and limited the rights inherent in ownership of the Conservation Area), shall be construed at all times and by all parties to effectuate the conservation purposes of this Conservation Easement.

Tax return and examination

On its Form 1065 for the year 2012, Railroad Holdings claimed a $16 million deduction for this contribution. The IRS examined the return. On March 15, 2016, the IRS mailed to Railroad Holdings and its TMP the FPAA that set forth the IRS's determination to disallow the full amount of Railroad Holdings' deduction for the contribution of the easement. The FPAA explained that the disallowance was based, in part, on the determination that the donation of the easement is not a qualified conservation contribution under section 170(h).

**[*7]** <u>Tax Court proceedings</u>

The TMP timely filed a petition in this Court on May 17, 2016. At that time, the principal place of business of both Railroad Holdings and the TMP was in Georgia.

The Commissioner has moved for partial summary judgment, and Railroad Holdings has opposed.

Discussion

I.      <u>Summary judgment</u>

The purpose of summary judgment is to expedite litigation and avoid unnecessary trials. <u>Fla. Peach Corp. v. Commissioner</u>, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we draw factual inferences in the light most favorable to the non-moving party, <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. at 520--in this instance, the petitioner. The critical fact in this case is simply the text of the deed--in particular, the provision as to distribution of proceeds in the event of extinguishment--and there is no dispute about what the deed says.

**[*8]** II.     Deduction for qualified conservation contribution

Section 170(a)(1) allows a deduction for any charitable contribution made within the taxable year. If the taxpayer makes a charitable contribution of property other than money, the amount of the contribution is generally equal to the fair market value of the property at the time the gift is made. See 26 C.F.R. sec. 1.170A-1(c)(1), Income Tax Regs. The Code generally restricts a taxpayer's charitable contribution deduction for the donation of "an interest in property which consists of less than the taxpayer's entire interest in such property". Sec. 170(f)(3)(A). But there is an exception to this rule for a "qualified conservation contribution." Sec. 170(f)(3)(B)(iii).

Section 170(h)(1) defines a "qualified conservation contribution" as a contribution of a "qualified real property interest" to a "qualified organization" (which we assume SERLC to be) "exclusively for conservation purposes." Under section 170(h)(2)(C), a "qualified real property interest" includes an interest in real property that is a restriction granted in perpetuity on the use of the real property. Section 170(h)(5)(A) provides that a contribution is not treated as exclusively for conservation purposes unless the conservation purpose is protected in perpetuity.

**[\*9]** III.    Proceeds from extinguishment

The Commissioner contends that article VI.B(2) of the deed of easement, which specifies the allocation of the proceeds from a sale of the property if the easement is ever extinguished as a result of judicial proceedings, fails to protect the conservation purpose in perpetuity.

A.    The proportionality requirement

In order to satisfy the requirement that the conservation purpose be protected in perpetuity, any interest in the property retained by the donor must be subject to legally enforceable restrictions that will prevent uses of the retained interest inconsistent with the conservation purpose of the donation.  26 C.F.R. sec. 1.170A-14(g)(1), Income Tax Regs.  It is possible that an easement may be extinguished, and in such an instance the easement would not have lasted in perpetuity.  However, the regulation provides that if an extinguishment does occur, the donation will nonetheless be deemed to have been in perpetuity if the proceeds of the extinguishment are paid to the donee organization and the donee uses them for its conservation purposes.  Section -14(g)(6)(ii) of the regulation requires as follows:

> [F]or a deduction to be allowed under this section, at the time of the gift the donor must agree that the donation of the perpetual conservation restriction gives rise to a property right, immediately

[*10] vested in the donee organization, <u>with a fair market value that is at least equal to the proportionate value</u> that the perpetual conservation restriction <u>at the time of the gift</u> bears to the value of the property as a whole at that time. * * * [T]hat <u>proportionate value of the donee's property rights shall remain constant</u>. * * * [T]he donee organization, on a subsequent sale, exchange, or involuntary conversion of the subject property, must be entitled to a portion of the proceeds at least <u>equal to that proportionate value</u> of the perpetual conservation restriction * * *.  [Emphasis added.[3]]

B.    Coal Property Holdings

In <u>Coal Property Holdings, LLC v. Commissioner</u>, 153 T.C. __ (Oct. 28, 2019), this Court recently addressed the deductibility of a conservation contribution where the easement deed contained a proportionality formula similar in some respects to the formula in the easement deed at issue here.  In <u>Coal Property</u> the deed provided that the donee's share of the proceeds of a judicial extinguishment would be calculated by using the easement's proportion of value, as determined at the time of the gift (so far, so good), but multiplying it not against the property's total fair market value at the time of sale but rather against the property's fair market value at the time of sale "<u>minus</u> any increase in value after the date of th[e] grant attributable to improvements".  <u>Id.</u> at __ (slip op. at 9)

_____

[3]The regulation continues:  "unless state law provides that the donor is entitled to the full proceeds from the conversion without regard to the terms of the prior perpetual conservation restriction."  26 C.F.R. sec. 1.170A-14(g)(6)(ii), Income Tax Regs.  In this case neither party contends that Railroad Holdings would be entitled to the full proceeds under applicable State law.

[*11] (emphasis added). We held that this subtraction, which diminishes the donee's share of the proceeds, is not permitted. Rather, under the regulation, a "donee * * * must be entitled to a portion of the proceeds at least equal to that proportionate value of the perpetual conservation restriction"; or else this limited exception to the perpetual use restriction of the conservation easement is not satisfied, and the donor has failed to meet the requirement that the conservation purpose of the contribution be protected in perpetuity. 26 C.F.R. sec. 1.170A-14(g)(6)(ii). The donee's entitlement to a proportionate share of the extinguishment proceeds must be absolute. See Coal Property Holdings, LLC v. Commissioner, 153 T.C. at __ (slip op. at 18) (citing Carroll v. Commissioner, 146 T.C. 196, 212 (2016)).

C.    Analysis

With different text, the deed in this case bears the same essential flaw as the deed in Coal Property: Though the deed incorporates from the regulation the phrase "proportionate value", the deed does not create a proportion or fraction that represents the donee's share of the property right, and hence a corresponding fraction of proceeds to which the donee is perpetually entitled. See PBBM-Rose Hill, Ltd. v. Commissioner, 900 F.3d 193, 205-206 (5th Cir. 2018). Rather, the deed determines instead a "proportionate value * * * at the time of the gift"--

[*12] meaning a dollar value that "shall remain constant"--and guarantees only that "constant" amount (i.e., that fixed dollar amount) for the donee. The defect can be illustrated as follows:

If the easement contributed by Railroad Holdings' deed were, at the time of the contribution, worth 10% of the value of a $10 million property, then the "proportionate value" of the easement (as the deed uses that term) would be $1 million, and that dollar value--rather than the fraction of value it did represent--"shall remain constant". Thus, if a court extinguished the easement many years later after the property had appreciated to $20 million, the donee's share of extinguishment proceeds would be not 10% of $20 million (i.e., the fractional share represented by $2 million) but rather the "constant" $1 million. The regulation requires that the donee "must be entitled to a portion of the proceeds at least equal to that proportionate value" (in this example, 10% of $20 million, or $2 million), 26 C.F.R. sec. 1.170A-14(g)(6)(ii), but Railroad Holdings' deed would give the donee only "at least" a constant 10% of the $10 million value "as of the date of" the contribution, or $1 million. (As we explain below in Part IV.A, an entitlement to an amount that is "at least" a fixed value is an entitlement only to no less than that value.)

**[\*13]** The deed in <u>Coal Property</u> achieved an impermissible diminution in the donee's entitlement by expressly subtracting the increase in value that was attributable to subsequent improvements. The deed here achieves such a diminution by applying its formula to a date-of-gift value that would exclude subsequent appreciation. Neither of these approaches complies with the regulation.

In this case SERLC will watch its proportion of potential extinguishment proceeds shrink over the years if the underlying property appreciates. This shrinking contribution cannot be said to be "perpetual" within the meaning of the regulation.

IV.  Petitioner's arguments

Petitioner offers three arguments to dispute this application of the regulation to its deed. None has merit.

A.  "At least"

Petitioner argues:

Section B(2) does not limit, or put a cap on, the amount that SERLC would receive, but rather clearly and unambiguously provides that SERLC "shall be entitled to a portion of the proceeds <u>at least</u> equal to the fair market value of this Conservation Easement".

In plain language, the proceeds will first be distributed to make SERLC whole, to provide to SERLC all of the proceeds equal to the

[*14] fair market value of the Conservation Easement determined as of the date of the Conservation Easement. However, under the specific terms of Section B(2), SERLC is not limited to that amount. If the proceeds exceed the values determined as of the date of the Conservation Easement, then the excess will be split based on the ratio of the value of the Conservation Easement as of the date of the donation of the Conservation Easement over the value of the Conservation Area without the burden of the Conservation Easement as of the date of the donation of the Conservation Easement.

The totality of the "plain language" and "specific terms" on which this contention rests is the single phrase "at least", and that phrase will not bear the weight that petitioner's argument must put on it. Petitioner's explanation of "split[ting]" "proceeds [that] exceed" the date-of-donation values is an invention with no basis in the text of the deed.

The regulation sets a minimum for the donee's participation in extinguishment proceeds and then, using the phrase "at least", makes it explicit that a deed may be more generous to the donee and still comply.[4] But a deed that

---

[4]The minimum value set by the regulation is a proportion of the proceeds determined by the ratio of the fair market value of the easement at the time of donation to the fair market value of the property at the time of the donation. If the property depreciated over time, then it is conceivable that the minimum to which the donee would be entitled upon extinguishment would actually be a lower value. Only in such an unlikely circumstance would this deed, as petitioner argues, provide a minimum amount to the donee that is higher than the regulation requires. But because the deed also allows for the possibility that the donee would receive a value that is less than the ratio set by the regulation, it fails to meet the proportionality requirement, which must be strictly construed. See Carroll v.

(continued...)

[*15] provides for the donee a share of proceeds that may be <u>less than</u> the minimum cannot comply by adding "at least" to its deficient formula. The donee must obtain through the deed a "property right" that includes a proportionate share of proceeds. If the donee's only <u>right</u> under the deed is to receive "at least" a <u>deficient</u> share, with a hope that there might be more, then the deed does not comply with the regulation.

B.     The donee's declaration

Petitioner submits a declaration of an officer of SERLC (whose personnel presumably composed the pertinent language of the deed); and that declaration, petitioner says, "confirms the intent of SERLC that its conservation deeds of easement be in full compliance with Section 170(h) of the Code and Section 1.170A-14, Income Tax Regs., and specifically, Section 170(h)(5)(A) and Section [1.]170A-14(g)(6), Income Tax Regs."

We assume for purposes of this opinion that this declaration contains an accurate statement of SERLC's intent. But even if we also assume the unstated (and unsubstantiated) further and more relevant proposition that this was not only the donee's intent but also <u>petitioner's</u> intent, the stated intent does not

---

[4](...continued)
<u>Commissioner</u>, 146 T.C. 196, 212 (2016).

[*16] compensate for the defect in the deed.  If petitioner and SERLC intended to compose a deed that complies with the regulations under section 170, then they failed to accomplish their intent.  Under the law, they needed for the deed to convey to SERLC a certain property right; and if their deed did not do so by its explicit terms, then their general intention to comply with section 170(h) and the regulations does not make up the difference.  Whatever they intended, petitioner did not give and SERLC did not receive the necessary property right.

Moreover, the declaration is broad and general and does not actually suggest that the parties intended a division of proceeds other than the division for which the deed actually provides.  The declaration does not allege an error or accident in the drafting.  Petitioner does not argue that State law permits us to consult parol evidence to determine the meaning of terms in the deed, nor does petitioner proffer such parol evidence of intended meanings.  The declaration as to intent does not affect the outcome here.

C.      "Construction of Terms"

Article VI.D of the deed provides that the deed "shall be construed to promote * * * the conservation purposes of this Conservation Easement, including such purposes as are defined in Section 170(h)(4)(A)".  See supra pp. 5-6.  Petitioner insists on the importance of part D, criticizes the Commissioner for

**[*17]** failing to include it in his memorandum, and quotes part D with this portion underlined:

> Any general rule of construction to the contrary notwithstanding, this Conservation Easement shall be liberally construed in favor of the grant to protect the Conservation Values and effect the policies and purposes of SERLC. If any provision of this Conservation Easement is found to be ambiguous, an interpretation consistent with its conservation purposes that would render the provision valid should be favored over any interpretation that would render it invalid. * * *

However, petitioner does not explain how this provision should affect our interpretation of the extinguishment provision and does not give any other commentary on this provision. In fact, part D of article VI of the deed has no effect on the outcome of this case.

First, in calling for the deed to be "construed to promote * * * the conservation purposes of this Conservation Easement, including such purposes as are defined in Section 170(h)(4)(A)", part D refers to paragraph (4)(A) (which defines "conservation purpose") and not paragraph (5)(A) (which states the "protect[ion] in perpetuity" requirement now at issue).

Second, part D proposes a cure in the case of "ambiguous" terms, whereas part B(2) is quite clear in establishing its formula for allocating extinguishment proceeds.

[*18] Third, the cure that part D proposes is to result in "an interpretation * * * that would render the provision [of the conservation easement] valid". But the validity of the conservation easement per se is not at issue here. We assume that the easement was valid and that it conferred on SERLC the rights that are stated in the deed. The cure that petitioner needs (but cannot obtain) is not for the validity of the easement but rather for the non-deductibility of its contribution.

Fourth, if (contrary to our three points above) this language in part D was actually a saving clause that purported to cure the proceeds formula, then it would be unenforceable and could not salvage what would otherwise be a failure of the formula to provide SERLC with the proportional value of extinguishment proceeds to which it is entitled. See Coal Property Holdings, LLC v. Commissioner, 153 T.C. at __ (slip op. at 27) (citing Belk v. Commissioner, 774 F.3d 221, 229 (4th Cir. 2014), aff'g 140 T.C. 1 (2013)). A donor cannot reserve in an easement deed a right that section 170(h) does not permit (such as a right to more than his share of extinguishment proceeds) but then save his charitable contribution by mentioning the rule he has violated and calling for that rule to kick in and save the day if his violation subsequently comes to light.

Part B(2) of article VI of the deed contains an unambiguous expression of the formula to apply to the proceeds of an extinguishment. If the terms of

**[*19]** part B(2) had never come to light in a tax proceeding, and if later the easement had ever been judicially extinguished, there is no reason to suppose that a court distributing proceeds would have overruled the express terms of part B(2).

<u>Conclusion</u>

The conservation purpose of the easement that Railroad Holdings granted to SERLC was not "protected in perpetuity" within the meaning of section 170(h)(5)(A). For this reason we find that the Commissioner properly denied the deduction.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.