146 T.C. No. 13

UNITED STATES TAX COURT

DOUGLAS G. CARROLL, III AND DEIRDRE M. SMITH, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5445-13.                          Filed April 27, 2016.

In 2005 Ps contributed a conservation easement on a parcel of
land to two qualified organizations. Ps' conservation easement
provides that, in the event that the conservation purpose is
extinguished because of an unexpected change in circumstances
surrounding the donated property, the donee organizations are
entitled to a proportionate share of extinguishment proceeds at least
equal to (1) the amount allowable as a deduction for Federal income
tax purposes over (2) the fair market value of the property at the time
of the contribution. Ps claimed a charitable contribution deduction on
their 2005 Federal income tax return and carried forward the
remaining deduction to their taxable years 2006, 2007, and 2008.

I.R.C. sec. 170(h) allows a deduction for a "qualified
conservation contribution." A qualified conservation contribution
requires that the contribution be exclusively for conservation
purposes. I.R.C. sec. 170(h)(1)(C). For a contribution to be made
exclusively for conservation purposes, the conservation purpose must
be protected in perpetuity. I.R.C. sec. 170(h)(5)(A).

Sec. 1.170A-14(g)(6)(ii), Income Tax Regs., provides that the conservation purpose of a contribution is not protected in perpetuity unless the contribution "gives rise to a property right, immediately vested in the donee organization, with a fair market value that is at least equal to the proportionate value that the perpetual conservation restriction at the time of the gift bears to the value of the property as a whole at that time. * * * Accordingly, when a change in conditions give rise to the extinguishment of a perpetual conservation restriction under paragraph (g)(6)(i) of this section, the donee organization, on a subsequent sale, exchange, or involuntary conversion of the subject property, must be entitled to a portion of the proceeds at least equal to that proportionate value of the perpetual conservation restriction".

Held: Ps' easement provides that the value of the contribution for purposes of determining the donees' rights to extinguishment proceeds is the amount of Ps' allowable deductions rather than the fair market value of the easement and therefore does not comply with the requirements of sec. 1.170A-14(g)(6), Income Tax Regs. The conservation purpose is not protected in perpetuity as required by I.R.C. sec. 170(h)(5)(A).

Held, further, Ps are liable for accuracy-related penalties under I.R.C. sec. 6662.

Scott A. Schwartzberg, David J. Polashuk, and William J. Marchica, for petitioners.

Michael A. Raiken, Elizabeth C. Mourges, and Nancy M. Gilmore, for respondent.

RUWE, Judge:  Respondent determined deficiencies in petitioners' Federal income tax and accuracy-related penalties as follows:

| Year | Deficiency | Accuracy-related penalty sec. 6662 |
|---|---|---|
| 2006 | $57,768 | $11,553.60 |
| 2007 | 103,771 | 20,754.20 |
| 2008 | 17,777 | 3,555.40 |

After concessions,[1] the issues remaining for decision are:  (1) whether petitioners are entitled to carryforward charitable contribution deductions for the taxable years 2006, 2007, and 2008 (years in issue) from their 2005 contribution of a conservation easement to the Maryland Environmental Trust (MET) and the Land Preservation Trust, Inc. (LPT), and (2) whether petitioners are liable for accuracy-related penalties under section 6662(a) for the years in issue.[2]

---

[1]The parties entered into a stipulation of settled issues for all of the other issues regarding deficiencies for the years in issue.

[2]In his pretrial memorandum respondent asserts that petitioners are liable for substantial and/or gross valuation misstatement penalties for the years in issue. Respondent indicates on page 2 of his pretrial memorandum that he anticipates making a motion that the pleadings conform to the facts to increase the penalty from 20% to 40%.  Respondent never filed such motion.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.[3]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, the second supplemental stipulation of facts, the stipulation of settled issues, and the attached exhibits are incorporated herein by this reference.

Petitioners resided in Maryland when they filed their petition.

On June 1, 1985, petitioner Douglas G. Carroll III (Dr. Carroll) became the sole owner of approximately 25.8533 acres of land on Greenspring Valley Road in Lutherville, Maryland (subject property).[4] The subject property consists of two parcels, primarily of open pastureland and woodland, and is part of the Green

---

[3]Pursuant to sec. 7491(a) the burden of proof on factual issues may shift to the Commissioner where the taxpayer complies with certain requirements. Petitioners argue that the burden of proof should shift to respondent. Respondent argues that petitioners did not meet the requirements of sec. 7491(a) to shift the burden of proof. Because our conclusions are based on a preponderance of the evidence, the allocation of the burden of proof in this case is immaterial. See Foster v. Commissioner, 138 T.C. 51, 53 n.4 (2012); McGowen v. Commissioner, T.C. Memo. 2011-186, 2011 Tax Ct. Memo LEXIS 185, at *5 n.3.

[4]The subject property has been owned by Dr. Carroll's family since 1920.

Spring Valley National Register Historic District.  The first parcel (parcel 1) was approximately 3.92 acres, and the second parcel (parcel 2) was approximately 21.83 acres.  The diagram below illustrates the layout of the two parcels.



The subject property is zoned RC-2, Agricultural, which is a restrictive type of zoning established to foster and protect agriculture in appropriate areas of Baltimore County, Maryland, and permits a maximum of two development rights on each parcel from 2 to 100 acres.  On parcel 1 is a two-story residence which serves as the primary residence for Dr. Carroll and his family (Carroll residence), and on parcel 2 was an approximately 1,000-square-foot tenant house (tenant house) where a farmhand resides.  Four properties adjacent to the subject property are encumbered by conservation easements held by either MET or the Maryland Agricultural Land Preservation Foundation (MALPF).

The Gift Deed

On November 14, 2005, Dr. Carroll sent (via facsimile) a handwritten letter to Attorney David Haile[5] requesting that Mr. Haile draft a deed transferring ownership of the subject property from Dr. Carroll to (1) Dr. Carroll, (2) Dr. Carroll's wife (Ms. Smith), and (3) petitioners' three minor children, as tenants in common. In his letter to Mr. Haile, Dr. Carroll instructs, in pertinent part:

> If it is possible not to define the % interests, that would be preferable. But they could be defined as the "maximum % interest allowed under the UGMA[]" or some equivalent language.
>
> It is my intent to create conservation easements on this property & then form a [sic] LLC or family partnership that further defines the interests & restrictions.

On November 22, 2005, Dr. Carroll executed a deed (gift deed) transferring his interest in the subject property to (1) himself, (2) Ms. Smith, and (3) himself as custodian for each of petitioners' three minor children under the Maryland Uniform Transfer to Minors Act, as tenants in common.[6] The gift deed does not provide specific ownership percentages transferred to Dr. Carroll, Ms. Smith, or

---

[5]Mr. Haile is a general practice attorney licensed to practice law in Maryland who focuses on real property transfers. Mr. Haile does not answer tax questions or give tax advice.

[6]Dr. Carroll testified that when the gift deed was executed petitioners' minor children were ages 9, 13, and 15, respectively.

petitioners' three minor children.  On November 29, 2005, the gift deed was recorded in the land records for Baltimore County, Maryland.

Lot Line Adjustment

On September 20, 2005, Dr. Carroll sent a letter to the Baltimore County Agricultural Land Preservation Advisory Board (BCALPAB) requesting a lot line adjustment for the subject property.  Dr. Carroll's request was to change the lot line dividing parcels 1 and 2 to create one 18-acre parcel and one 7.8-acre parcel.  On October 19, 2005, BCALPAB recommended that parcel 1 be at least 20 acres.  On December 7, 2005, Dr. Carroll sent (via facsimile) a letter dated October 20, 2005, to BCALPAB proposing a new lot line adjustment.  The letter proposed to create one 20.93-acre lot and one 4.8-acre lot.  On December 13, 2005, BCALPAB met and recommended approval of Dr. Carroll's December 7, 2005, request for a lot line adjustment.  Following the lot line adjustment, both the Carroll residence and the tenant house were located on parcel 1.  The diagram below illustrates the layout of the two parcels following the lot line adjustment.



Parcel 2
4.8 acres

Parcel 1
20.93 acres

Deed of Conservation Easement

On December 15, 2005, petitioners and Dr. Carroll as custodian of

petitioners' three minor children executed a deed of conservation easement

(conservation easement) for no consideration on parcel 1 of the subject property in

favor of MET[7] and LPT[8] as joint easement holders.[9]  Respondent concedes that

_____

[7]MET is a land trust created by the Maryland General Assembly pursuant to
subtitle 2 of title 3 of the Natural Resources Article of the Annotated Code of
Maryland (1983 repl. vol.) in 1967 to conserve, improve, and perpetuate
Maryland's natural environment.  One of MET's most active programs is
statewide work pertaining to conservation easements.  The focus of MET is on
agricultural properties and properties that are considered environmentally sensitive
(such as critical areas, wildlife habitats, farms, and wetlands) and are larger than
25 acres.

[8]LPT is a sec. 501(c)(3) organization whose mission is, among other things,
to preserve and encourage conservation easements.

[9]The benefits of multiple agencies holding a conservation easement include
sharing the responsibilities of monitoring and enforcing the terms of the

(continued...)

both MET and LPT are qualified organizations as defined in section 170(h)(3).

The terms of the conservation easement provide that it was executed to "maintain

the significant conservation features * * * and the dominant scenic, cultural, rural,

agricultural, woodland and wetland characteristics of the Property, and to prevent

the use or development of the Property for any purpose or in any manner that

would conflict with these features and characteristics and the maintenance of the

Property in its open-space condition."  Article I of the conservation easement

provides:

> This Conservation Easement shall be perpetual.  It is an easement in gross and as such is inheritable and assignable in accordance with Article VI and runs with the land as an incorporeal interest in the Property, enforceable with respect to the Property by Grantees against Grantors and their personal representatives, heirs, successors and assigns.

Article II of the conservation easement sets forth activities that are restricted

and/or prohibited on the encumbered property.  Article II authorizes the Carroll

residence to remain on the subject property and limits the tenant house to 2,000

square feet.  Any construction or work contemplated by petitioners must be

approved in advance by MET and LPT and "[s]uch approval shall be granted or

---

[9](...continued)
conservation easement and accessing resources available to the coholding agency.

denied based on the Grantees' opinion as to whether or not the proposed location conforms with the conservation values listed in Exhibit B".

Article III of the conservation easement authorizes MET and LPT to "enter the Property at reasonable times for the purpose of inspecting the Property to determine whether the Grantors are complying with the Terms of this Conservation Easement". In the event that petitioners are found to be in breach of the terms of the conservation easement, Article III authorizes MET and LPT to (1) institute a lawsuit to enforce the terms of the conservation easement or (2) require that the subject property be restored promptly pursuant to the conservation easement.

Exhibit B attached to the conservation easement provides:

> The following public open space conservation values are associated with the Property:

> 1. Master Plan: This Conservation Easement is consistent with and supports the land use policy of the Baltimore County Master Plan, adopted in 2000 by the Baltimore County Planning Board. The Property lies within an Agricultural Preservation Area. County goals for Agricultural Preservation Areas include:

> (a) Permanently preserve lands for agriculture and avoid conflicts with incompatible uses.

> (b) Actively pursue and promote easement and other programs designed to preserve agriculture.

(c) Protect, conserve and restore all essential natural resources (including forests), with particular attention to groundwater.

(d) Preserve and enhance the County's significant scenic resources as designated on the scenic resources map, including scenic corridors, scenic views and gateways, as an essential component contributing to the County's quality of life.

2. Area of Critical State Concern: The Property lies within the Jones Falls watershed, which was designated an Area of Critical State Concern for Baltimore County in 1977 by the Baltimore County Planning Board. Significant Critical Areas relating to the Jones Falls are trout waters, floodplain areas, and prime agriculture, forestry, and wildlife lands. (Source: Designation of Areas of Critical State Concern within Baltimore County, Baltimore County Planning Board, 1977).

3. Agricultural Land and Woodland: The Property includes about 19 acres of productive agricultural land and woodland.

4. Historic Value: The Property is located in the Green Spring Valley National Register Historic District.

5. Part of Larger Conservation Area: The Property is surrounded by easements held by either the Maryland Environmental Trust or the Maryland Agricultural Land Preservation Foundation.

6. Vegetative Buffer Strip: A vegetative buffer strip will be maintained next to the tributary of Dipping Pond Run on the Property. Buffer strip standards are consistent with guidelines issued by the Maryland Department of Natural Resources for the protection of surface water quality.

7. Maryland Environmental Trust Policy: The conservation values of the Property defined above are pursuant to the

conservation policies adopted by the Maryland Environmental Trust on February 6, 2002.

Article VI of the conservation easement provides miscellaneous provisions, including a provision concerning division of proceeds in the event that unexpected changes in the conditions surrounding the subject property make it impossible or impractical to continue using it for the intended conservation purposes. Article VI.D, subparagraphs (1) and (2), of the conservation easement provides:

(1) The granting of this Conservation Easement gives rise to a property right, immediately vested in Grantees, with a fair market value equal to the ratio of the value of this Conservation Easement on the effective date of this grant to the value of the Protected Property without deduction for the value of the Conservation Easement on the effective date of this grant. The value on the effective date of this grant shall be the deduction for federal income tax purposes allowable by reason of this grant, pursuant to Section 170(h) of the Code. The parties shall include the ratio of those values with the Baseline Determination and shall amend such values, if necessary, to reflect any final determination thereof by the Internal Revenue Service or a court of competent jurisdiction. For purposes of this paragraph, the ratio of the value of the Conservation Easement to the value of the Property unencumbered by the Conservation Easement shall remain constant, and the percentage interests of Grantors and Grantees in the fair market value of the Property thereby determinable shall remain constant.

(2) If circumstances arise in the future that render the entire purpose of this Conservation Easement impossible to accomplish, this Conservation Easement may only be terminated or extinguished whether with respect to all or part of the Property, by judicial proceedings in a court of competent jurisdiction. In the event of any sale of all or a portion of the Property (or any other property received

in connection with an exchange or involuntary conversion of the Property) after such termination or extinguishment, and after satisfaction of prior claims and net of any costs or expenses associated with such sale, Grantors and Grantees shall divide the proceeds from such sale (minus any amount attributable to the value of additional improvements made by Grantors after the effective date of this Conservation Easement, which amount is reserved to Grantors) in accordance with their respective percentage interests in the fair market value of the Property, as such percentage interests are determined under the provisions of the preceding paragraph, adjusted, if necessary, to reflect a partial termination or extinguishment of this Conservation Easement. All such proceeds received by Grantees shall be used by Grantees in a manner consistent with Grantees' conservation purposes.

On February 24, 2006, Terry Dunkin of Colliers Pinkard visited the subject property to appraise the easement. By letter dated May 4, 2006, Mr. Dunkin determined the value of the easement to be $1.2 million.

On March 8, 2006, MET mailed petitioners a letter acknowledging receipt of the conservation easement. On a date not included in the record, the conservation easement was accepted by MET's board of directors and ratified by the Maryland board of public works (which is composed of the Governor of Maryland, the Comptroller of Maryland, and the Treasurer of Maryland) as being consistent with MET's policies and procedures. On a date not included in the record, the conservation easement was accepted by LPT's board of trustees as

being consistent with its mission to preserve and encourage conservation easements in Baltimore County, Maryland.

On October 17, 2006, respondent received petitioners' 2005 Federal income tax return reporting their donation of the conservation easement valued at $1.2 million. This was 100% of Mr. Dunkin's value undiminished by any amount attributable to the interests of petitioners' children in the property. Petitioners attached to their 2005 Federal income tax return a Form 8283, Noncash Charitable Contributions, signed by Mr. Dunkin. Petitioners claimed a $495,356 noncash charitable contribution deduction on Schedule A, Itemized Deductions, of their 2005 return and carried forward $704,644 of the remaining $1.2 million easement contribution to subsequent tax years. On October 23, 2007, October 20, 2008, and October 19, 2009, respondent received petitioners' 2006, 2007, and 2008 tax returns, respectively. On their respective Schedules A petitioners claimed carryover noncash charitable contribution deductions of $196,008 for 2006, $406,467 for 2007, and $55,539 for 2008.

Notice of Deficiency

On January 30, 2013, respondent issued to petitioners a notice of deficiency for the years in issue. In the notice of deficiency respondent disallowed petitioners' claimed noncash charitable contribution deductions for the years in

issue. Petitioners timely filed a petition with this Court disputing the determinations in the notice of deficiency.

OPINION

## I. Conservation Easements Generally

Any charitable contribution made during a taxable year is allowed as a deduction only if the contribution is verified under regulations prescribed by the Secretary. Sec. 170(a)(1). Section 170(f)(3) generally does not allow an individual to deduct as a charitable contribution the gift of property consisting of less than his or her entire interest in that property. An exception applies in the case of a "qualified conservation contribution." Sec. 170(f)(3)(B)(iii). Section 170(h)(1) defines a "qualified conservation contribution" as follows:

> (1) In general.--For purposes of subsection (f)(3)(B)(iii), the term "qualified conservation contribution" means a contribution--
>
> (A) of a qualified real property interest,
>
> (B) to a qualified organization,
>
> (C) exclusively for conservation purposes.

All three requirements must be satisfied for a donation to be a qualified conservation contribution. See Irby v. Commissioner, 139 T.C. 371, 379 (2012);

Simmons v. Commissioner, T.C. Memo. 2009-208, 2009 Tax Ct. Memo LEXIS 213, at *9, aff'd, 646 F.3d 6 (D.C. Cir. 2011).

Respondent concedes that petitioners' conservation easement was granted to qualified organizations--i.e., MET and LPT--in satisfaction of section 170(h)(1)(B).  However, respondent argues that petitioners' conservation easement does not constitute a qualified real property interest under section 170(h)(1)(A) and was not contributed exclusively for conservation purposes under section 170(h)(1)(C).  We begin our discussion by addressing whether petitioners' donation of the conservation easement is a qualified real property interest.

A.  Qualified Real Property Interest

The term "qualified real property interest" includes "a restriction (granted in perpetuity) on the use which may be made of the real property."  Sec. 170(h)(2)(C).  Section 1.170A-14(b)(2), Income Tax Regs., provides the following with respect to section 170(h)(2)(C):

> A perpetual conservation restriction is a qualified real property interest.  A "perpetual conservation restriction" is a restriction granted in perpetuity on the use which may be made of real property-- including, an easement or other interest in real property that under state law has attributes similar to an easement (e.g., a restrictive covenant or equitable servitude).  * * *

Article I of petitioners' conservation easement provides that the easement is perpetual, inheritable, and assignable, runs with the land as an incorporeal interest, and is "enforceable with respect to the Property by Grantees against Grantors and their personal representatives, heirs, successors and assigns." Article II of the conservation easement imposes numerous restrictions on the use of the subject property which are consistent with the conservation purposes of the easement, including: limitations on development rights, prohibition on transferring development rights from the encumbered property, and limitations on the number and size of structures that may be built on the subject property. Article II.K of the conservation easement requires that all rights reserved by petitioners and Dr. Carroll as custodian of petitioners' minor children "shall be exercised so as to prevent or to minimize damage to water quality, air quality, land/soil stability and productivity, wildlife, scenic and cultural values, and the natural topographic and open-space character of the Property." Moreover, representatives of MET and LPT testified that both agencies will continue to conduct inspections of the subject property to ensure compliance and will litigate violations of the terms of the conservation easement. The express terms of the conservation easement satisfy the requirements of section 1.170A-14(b)(2), Income Tax Regs., by providing legally enforceable restrictions that will prevent uses of the retained interest in the

subject property that are inconsistent with the conservation purposes of the contribution. Accordingly, we hold that petitioners' contribution of the conservation easement is a qualified real property interest pursuant to section 170(h)(2)(C).

B. Conservation Purpose

In order for a contribution of property to constitute a "qualified conservation contribution" it must be donated "exclusively for conservation purposes". Sec. 170(h). A contribution is made "exclusively for conservation purposes" if it meets the requirements of section 170(h)(4) and (5). Section 170(h)(4)(A) provides that a contribution is for conservation purposes only if it serves one of four delineated conservation purposes:

(A) In general.--For purposes of this subsection, the term "conservation purpose" means--

(i) the preservation of land areas for outdoor recreation by, or the education of, the general public,

(ii) the protection of a relatively natural habitat of fish, wildlife, or plants, or similar ecosystem,

(iii) the preservation of open space (including farmland and forest land) where such preservation is--

(I) for the scenic enjoyment of the general public, or

(II) pursuant to a clearly delineated Federal, State, or local governmental conservation policy,

and will yield a significant public benefit, or

(iv) the preservation of an historically important land area or a certified historic structure.

Under section 170(h)(4)(A), each of these four prongs is a conservation purpose in and of itself, and a taxpayer's satisfaction of one of these prongs is sufficient to establish the existence of a conservation purpose. See S. Rept. No. 96-1007, at 10 (1980), 1980-2 C.B. 599, 604. Petitioners contend that their contribution satisfies the third prong of section 170(h)(4)(A), i.e., that it preserves open space pursuant to a clearly delineated Federal, State, or local government conservation policy and yields a significant public benefit.

The general requirements necessary to establish that the contribution of a conservation easement preserves open space pursuant to a clearly delineated Federal, State, or local governmental policy are set forth in section 1.170A-14(d)(4)(iii)(A), Income Tax Regs., which provides:

(A) In general.--The requirement that the preservation of open space be pursuant to a clearly delineated Federal, state, or local governmental policy is intended to protect the types of property identified by representatives of the general public as worthy of preservation or conservation. A general declaration of conservation goals by a single official or legislative body is not sufficient. However, a governmental conservation policy need not be a

certification program that identifies particular lots or small parcels of individually owned property. This requirement will be met by donations that further a specific, identified conservation project, such as the preservation of land within a state or local landmark district that is locally recognized as being significant to that district; the preservation of a wild or scenic river, the preservation of farmland pursuant to a state program for flood prevention and control; or the protection of the scenic, ecological, or historic character of land that is contiguous to, or an integral part of, the surroundings of existing recreation or conservation sites. For example, the donation of a perpetual conservation restriction to a qualified organization pursuant to a formal resolution or certification by a local governmental agency established under state law specifically identifying the subject property as worthy of protection for conservation purposes will meet the requirement of this paragraph. A program need not be funded to satisfy this requirement, but the program must involve a significant commitment by the government with respect to the conservation project. For example, a governmental program according preferential tax assessment or preferential zoning for certain property deemed worthy of protection for conservation purposes would constitute a significant commitment by the government.

Section 1.170A-14(d)(4)(iii)(B), Income Tax Regs., explains the effect of governmental agency review in establishing whether a conservation easement is pursuant to a clearly delineated governmental policy:

> (B) Effect of acceptance by governmental agency.--Acceptance of an easement by an agency of the Federal Government or by an agency of a state or local government (or by a commission, authority, or similar body duly constituted by the state or local government and acting on behalf of the state or local government) tends to establish the requisite clearly delineated governmental policy, although such acceptance, without more, is not sufficient. The more rigorous the review process by the governmental agency, the more the acceptance of the easement tends to establish the requisite clearly delineated

governmental policy. For example, in a state where the legislature has established an Environmental Trust to accept gifts to the state which meet certain conservation purposes and to submit the gifts to a review that requires the approval of the state's highest officials, acceptance of a gift by the Trust tends to establish the requisite clearly delineated governmental policy. However, if the Trust merely accepts such gifts without a review process, the requisite clearly delineated governmental policy is not established.

Petitioners have established that the contribution of their conservation easement was accepted by a State government agency after a thorough review process. At trial petitioners offered the testimony of Megan Benjamin, a conservation easement planner with MET. Ms. Benjamin testified that MET does not accept every conservation easement proposed to the agency and adheres to a thorough review policy in determining which easements are suitable for acceptance. According to Ms. Benjamin, a prospective property is first evaluated by an MET conservation easement planner; if the property does not satisfy MET's policies, it is not accepted by the agency. However, if an easement is deemed suitable by an MET conservation easement planner, it is submitted for approval to the MET board of directors and then subsequently to the board of public works which consists of the Governor of Maryland, the Comptroller of Maryland, and the Treasurer of Maryland. Ms. Benjamin also testified that MET consults with local governments to obtain opinions regarding whether prospective easements are

consistent with local master plans and zoning. In addition, MET works with the Department of Natural Resources and the Maryland Historical Trust to research prospective conservation easements. Petitioners' conservation easement was subject to this multistep evaluation process before it was accepted by MET.[10] Accordingly, we conclude that the thoroughness of MET's easement-review process, combined with the requisite approval from Maryland's highest officials, establishes that petitioners' conservation easement preserves open space (including farmland and forest land) pursuant to a clearly delineated Federal, State, or local governmental conservation policy pursuant to section 170(h)(4)(A)(iii)(II).

C. Significant Public Benefit

In order for petitioners' conservation easement to satisfy the conservation purpose requirement of section 170(h)(4)(A)(iii) the easement must also "yield a significant public benefit". The regulations under section 170(h)(4)(A) provide factors to be considered when evaluating whether the contribution of a

---

[10]Ms. Benjamin further stated that, in MET's opinion, petitioners' conservation easement serves many conservation purposes, including: being consistent with the county master plan and various other government policies and plans, being productive agricultural land, having historic value, being within the Green Spring Valley Historic District, being part of a larger conservation area, providing a vegetative buffer strip, and being consistent with MET policy.

conservation easement yields a significant public benefit. Section 1.170A-14(d)(4)(iv)(A), Income Tax Regs., provides:

> (iv) Significant public benefit.--(A) Factors.--All contributions made for the preservation of open space must yield a significant public benefit. Public benefit will be evaluated by considering all pertinent facts and circumstances germane to the contribution. Factors germane to the evaluation of public benefit from one contribution may be irrelevant in determining public benefit from another contribution. No single factor will necessarily be determinative. Among the factors to be considered are:
>
> (1) The uniqueness of the property to the area;
>
> (2) The intensity of land development in the vicinity of the property (both existing development and foreseeable trends of development);
>
> (3) The consistency of the proposed open space use with public programs (whether Federal, state, or local) for conservation in the region, including programs for outdoor recreation, irrigation or water supply protection, water quality maintenance or enhancement, flood prevention and control, erosion control, shoreline protection, and protection of land areas included in, or related to, a government approved master plan or land management area;
>
> (4) The consistency of the proposed open space use with existing private conservation programs in the area, as evidenced by other land, protected by easement or fee ownership by organizations referred to in § 1.170A-14(c)(1), in close proximity to the property;
>
> (5) The likelihood that development of the property would lead to or contribute to degradation of the scenic, natural, or historic character of the area;

(6) The opportunity for the general public to use the property or to appreciate its scenic values;

(7) The importance of the property in preserving a local or regional landscape or resource that attracts tourism or commerce to the area;

(8) The likelihood that the donee will acquire equally desirable and valuable substitute property or property rights;

(9) The cost to the donee of enforcing the terms of the conservation restriction;

(10) The population density in the area of the property; and

(11) The consistency of the proposed open space use with a legislatively mandated program identifying particular parcels of land for future protection.

Petitioners' conservation easement yields a significant public benefit for the following reasons. First, the record before us indicates that the subject property is located in the Green Spring Valley, which is a highly desirable area of Baltimore County, Maryland, and is under development pressure due to its close proximity to Interstate 695, Interstate 83, and the urban centers of Towson, Pikesville, and Lutherville. In the market area analysis attached to the May 4, 2006, appraisal report, Mr. Dunkin states: "It is unusual that a property the size of the subject property still exists in this area." Second, the subject property is zoned RC-2, Agricultural, which is a restrictive type of zoning established to foster and protect

agriculture in certain areas of Baltimore County, Maryland.  Third, the Green

Spring Valley is specifically designated by the Baltimore County, Maryland,

Master Plan 2010 as an agricultural preservation area "created to protect the

county's agricultural industry, as well as its natural resources, and areas of scenic

and historical significance."  Fourth, four properties adjacent to the subject

property are encumbered by easements held by either MET or MALPF.

Accordingly, on the basis of the record before us, we conclude that petitioners'

conservation easement yields a significant public benefit as required by section

170(h)(4)(A)(iii) and section 1.170A-14(d)(4)(iv)(A), Income Tax Regs.

## II.  Protected in Perpetuity

Section 170(h)(5)(A) provides that a "contribution shall not be treated as

exclusively for conservation purposes unless the conservation purpose is protected

in perpetuity."[11]  If the conservation purpose is not protected in perpetuity, the

---

[11]The perpetuity requirement of sec. 170(h)(5)(A) is separate and distinct from the perpetuity requirement discussed in sec. 170(h)(2)(C).  See Belk v. Commissioner, 140 T.C. 1, 12 (2013) ("Section 170(h)(2)(C) requires that the interest in real property donated by taxpayers be subject to a use restriction in perpetuity, whereas section 170(h)(5) requires that the conservation purpose of the conservation easement be protected in perpetuity."), supplemented by T.C. Memo. 2013-154, aff'd, 774 F.3d 221 (4th Cir. 2014).

The Court of Appeals for the Fourth Circuit further noted this distinction by stating:  "Though both requirements speak in terms of 'perpetuity,' they are not

(continued...)

contribution is not a "qualified conservation contribution" and the taxpayers are therefore not entitled to a deduction under section 170.

Section 1.170A-14(g), Income Tax Regs., elaborates on the protected-in-perpetuity requirement of section 170(h)(5)(A) by setting forth substantive rules to safeguard the conservation purpose of a contribution. Most pertinent to the instant case, section 1.170A-14(g)(6), Income Tax Regs., addresses subsequent unexpected changes in the conditions surrounding the donated property that make it impossible or impractical to continue using the property for the intended conservation purpose. Section 1.170A-14(g)(6), Income Tax Regs., provides as follows:

> (6) Extinguishment.--(i) In general.--If a subsequent unexpected change in the conditions surrounding the property that is the subject of a donation under this paragraph can make impossible or impractical the continued use of the property for conservation purposes, the conservation purpose can nonetheless be treated as protected in perpetuity if the restrictions are extinguished by judicial proceeding and all of the donee's proceeds (determined under paragraph (g)(6)(ii) of this section) from a subsequent sale or exchange of the property are used by the donee organization in a manner consistent with the conservation purposes of the original contribution.

---

[11](...continued) one and the same. The provision at issue here, §170(h)(2)(C), governs the grant of the easement itself, while the provision at issue in * * * Kaufman, § 170(h)(5)(A), governs its subsequent enforcement." Belk v. Commissioner, 774 F.3d at 228.

(ii) Proceeds.--In the case of a donation made after February 13, 1986, for a deduction to be allowed under this section, at the time of the gift the donor must agree that the donation of the perpetual conservation restriction gives rise to a property right, immediately vested in the donee organization, with a fair market value that is at least equal to the proportionate value that the perpetual conservation restriction at the time of the gift bears to the value of the property as a whole at that time. See § 1.170A-14(h)(3)(iii) relating to the allocation of basis. For purposes of this paragraph (g)(6)(ii), that proportionate value of the donee's property rights shall remain constant. Accordingly, when a change in conditions gives rise to the extinguishment of a perpetual conservation restriction under paragraph (g)(6)(i) of this section, the donee organization, on a subsequent sale, exchange, or involuntary conversion of the subject property, must be entitled to a portion of the proceeds at least equal to that proportionate value of the perpetual conservation restriction, unless state law provides that the donor is entitled to the full proceeds from the conversion without regard to the terms of the prior perpetual conservation restriction. [Emphasis added.]

These regulations have been described as "a single--and exceedingly narrow--exception to the requirement that a conservation easement impose a perpetual use restriction" on real property. Belk v. Commissioner, 774 F.3d 221, 225 (4th Cir. 2014), aff'g 140 T.C. 1 (2013). The requirements of section 1.170A-14(g)(6)(i) and (ii), Income Tax Regs., are strictly construed; if a grantee is not absolutely entitled to a proportionate share of extinguishment proceeds, then the conservation purpose of the contribution is not protected in perpetuity. Kaufman v. Commissioner (Kaufman I), 134 T.C. 182, 186-187 (2010), reconsideration denied by Kaufman v. Commissioner (Kaufman II), 136 T.C. 294, 309 (2011),

aff'd in part, vacated in part and remanded in part sub nom. Kaufman v. Shulman (Kaufman III), 687 F.3d 21 (1st Cir. 2012). In Kaufman III the Court of Appeals for the First Circuit affirmed in part, vacated in part, and remanded in part our Opinions in Kaufman I and Kaufman II. After remand by the Court of Appeals we issued our opinion in Kaufman v. Commissioner, T.C. Memo. 2014-52, aff'd, 784 F.3d 56 (1st Cir. 2015). As subsequently explained, we rely only on those parts of our Opinions in Kaufman I and Kaufman II that are consistent with the opinion of the Court of Appeals in Kaufman III.

The taxpayers in Kaufman claimed a charitable contribution deduction for their donation of a facade easement on their Boston rowhouse to a nonprofit organization. Kaufman I, 134 T.C. at 184. Consistent with section 1.170A-14(g)(6), Income Tax Regs., the facade easement granted the nonprofit organization a proportionate share of future extinguishment proceeds, as follows:

> In the event this Agreement is ever extinguished, whether through condemnation, judicial decree or otherwise, Grantor agrees on behalf of itself, its heirs, successors and assigns, that Grantee, or its successors and assigns, will be entitled to receive upon the subsequent sale, exchange or involuntary conversion of the Property, a portion of the proceeds from such sale, exchange or conversion equal to the same proportion that the value of the initial easement donation bore to the entire value of the property at the time of the donation * * * unless controlling state law provides that the Grantor is entitled to the full proceeds in such situations, without regard to the Agreement. Grantee agrees to use any proceeds so realized in a

> manner consistent with the preservation purposes of the original contribution.

Kaufman II, 136 T.C. at 299 (alteration in original).  However, the taxpayers' property was subject to a mortgage, and a "lender agreement" recorded with the facade easement granted the mortgagee a "prior claim" to any condemnation or insurance proceeds in preference to the nonprofit organization.  Id. at 299-300.  We held that the taxpayers' facade easement contribution failed as a matter of law to comply with the perpetuity requirement of section 1.170A-14(g)(6), Income Tax Regs., because the nonprofit organization was not absolutely guaranteed its proportionate share of extinguishment proceeds.  Kaufman I, 134 T.C. at 187.  We explained that the taxpayers "cannot avoid the strict requirement in section 1.170A-14(g)(6)(ii), Income Tax Regs., simply by showing that they would most likely be able to satisfy both their mortgage and their obligation to * * * [the nonprofit organization]."  Id. at 186.  In other words, although the taxpayers in Kaufman granted the nonprofit organization a proportionate share of extinguishment proceeds, and thus seemingly complied with section 1.170A-14(g)(6), Income Tax Regs., the subsequently executed lender agreement undercut this commitment by stipulating that the mortgagee and its assignees had a prior claim to certain insurance and condemnation proceeds.

The taxpayers in <u>Kaufman</u> appealed to the Court of Appeals for the First Circuit. <u>Kaufman III</u>, 687 F.3d at 21. Although absent a stipulation to the contrary an appeal of the instant case lies with the Court of Appeals for the Fourth Circuit, the Court of Appeals for the First Circuit's opinion in <u>Kaufman III</u> is instructive on several points. The Court of Appeals in <u>Kaufman III</u> upheld as valid section 1.170A-14(g)(6), Income Tax Regs., and explained that the regulation is "designed in case of extinguishment both (1) to prevent taxpayers from reaping a windfall if the property is destroyed or condemned and they get the proceeds from insurance or condemnation and (2) to assure that the donee organization can use its proportionate share of the proceeds to advance the cause of historic preservation elsewhere." <u>Id.</u> at 26 (fn. ref. omitted). In vacating our decision the Court of Appeals found that the Government's interpretation of section 1.170A-14(g)(6), Income Tax Regs., was unreasonable, explaining that "given the ubiquity of super-priority for tax liens, the IRS's reading of its regulation would appear to doom practically all donations of easements, which is surely contrary to the purpose of Congress." <u>Id.</u> at 27. The Court of Appeals further explained that section 1.170A-14(g)(6), Income Tax Regs., did not require that the donee have an absolute right to the extinguishment proceeds. Rather, it

was sufficient that the donee have an absolute right against the donor for its proportion. Id.[12]

Although the issue in the instant case involves the application of section 1.170A-14(g)(6), Income Tax Regs., the determinative facts are distinguishable from those in Kaufman, which involved the claim priority of a donee organization and a mortgagee with respect to extinguishment proceeds. In the instant case the issue is whether the donee has an absolute right against the donor upon extinguishment. The matter sub judice involves the method of determining the numerator of the formula in section 1.170A-14(g)(6)(ii), Income Tax Regs., for purposes of calculating the donees' entitlement to extinguishment proceeds.

---

[12]As the Court of Appeals for the First Circuit later explained:

> The Tax Court held that, because the Kaufmans' mortgage lender had retained a "claim to all insurance proceeds * * * and all proceeds of condemnation" superior to the claim of the Trust, the Trust was not guaranteed to receive its due proportion of the proceeds in the event of a condemnation of the Kaufmans' residence. We held that this was error because it was sufficient that the Trust retained a claim to its due proportion of the proceeds as against the owner-donor; the regulation did not require the Trust to have an absolute right to those proceeds as against the rest of the world.

Kaufman v. Commissioner, 784 F.3d 56, 63 n.5 (1st Cir. 2015) (alteration in original) (internal citations omitted) (quoting Kaufman v. Shulman, 687 F.3d 21, 27 (1st Cir. 2012), aff'g in part, vacating in part, and remanding in part Kaufman v. Commissioner, 136 T.C. 294 (2011), and 134 T.C. 182 (2010)), aff'g T.C. Memo. 2014-52.

For purposes of deciding this case, we will follow the principles of the Kaufman opinions upon which both this Court and the Court of Appeals agree with respect to the application of section 1.170A-14(g)(6), Income Tax Regs. No reported cases have specifically addressed the formula in section 1.170A-14(g)(6)(ii), Income Tax Regs., and thus this is an issue of first impression in this Court.

Article VI.D, subparagraphs (1) and (2), of petitioners' conservation easement provides:

> D. (1) The granting of this Conservation Easement gives rise to a property right, immediately vested in Grantees, with a fair market value equal to the ratio of the value of this Conservation Easement on the effective date of this grant to the value of the Protected Property without deduction for the value of the Conservation Easement on the effective date of this grant. The value on the effective date of this grant shall be the deduction for federal income tax purposes allowable by reason of this grant, pursuant to Section 170(h) of the Code. The parties shall include the ratio of those values with the Baseline Documentation and shall amend such values, if necessary, to reflect any final determination thereof by the Internal Revenue Service or a court of competent jurisdiction. For purposes of this paragraph, the ratio of the value of the Conservation Easement to the value of the Property unencumbered by the Conservation Easement shall remain constant, and the percentage interests of Grantors and Grantees in the fair market value of the Property thereby determinable shall remain constant.
>
> (2) If circumstances arise in the future that render the entire purpose of this Conservation Easement impossible to accomplish, this Conservation Easement may only be terminated or extinguished

whether with respect to all or part of the Property, by judicial proceedings in a court of competent jurisdiction. In the event of any sale of all or a portion of the Property (or any other property received in connection with an exchange or involuntary conversion of the Property) after such termination or extinguishment, and after satisfaction of prior claims and net of any costs or expenses associated with such sale, <u>Grantors and Grantees shall divide the proceeds from such sale (minus any amount attributable to the value of additional improvements made by Grantors after the effective date of this Conservation Easement, which amount is reserved to Grantors) in accordance with their respective percentage interests in the fair market value of the Property, as such percentage interests are determined under the provisions of the preceding paragraph</u>, adjusted, if necessary, to reflect a partial termination or extinguishment of this Conservation Easement. All such proceeds received by Grantees shall be used by Grantees in a manner consistent with Grantees' conservation purposes. [Emphasis added.]

Section 1.170A-14(g)(6)(ii), Income Tax Regs., requires the grantee's proportionate interest upon extinguishment of a conservation easement to be a percentage determined by (1) the fair market value of the conservation easement on the date of the gift (numerator), over (2) the fair market value of the property as a whole on the date of the gift. However, Article VI.D, subparagraph (1), of petitioners' conservation easement provides that the value of the easement on the effective date "shall be the <u>deduction for federal income tax purposes</u> allowable by reason of this grant, pursuant to Section 170(b) of the Code". (Emphasis added.) Respondent argues that petitioners' conservation easement violates section 1.170A-14(g)(6)(ii), Income Tax Regs., because the conservation purpose is not

protected in perpetuity and consequently is not a qualified conservation contribution. We agree with respondent.

The issue is whether, in the event of an extinguishment of petitioners' conservation easement, MET and LPT would be guaranteed a proportionate share of extinguishment proceeds as required by section 1.170A-14(g)(6)(ii), Income Tax Regs. According to the express terms of Article VI.D, subparagraph (1), of the conservation easement, the grantors (i.e., petitioners) agree that in the event of a change in circumstances giving rise to an extinguishment of the conservation easement, the grantees (i.e., MET and LPT) would be entitled to a proportionate share of the proceeds arising from the extinguishment. However, the value of MET's and LPT's proportionate interest is specifically defined in Article VI.D, subparagraph (1), to be determined by the ratio of "the deduction for federal income tax purposes allowable by reason of this grant, pursuant to Section 170(h) of the Code" over the value of the subject property as a whole on the date of the gift. This provision does not comply with the requirement of section 1.170A-14(g)(6)(ii), Income Tax Regs., that the proportionate share of extinguishment

proceeds be determined by the fair market value of the easement on the date of the gift over the fair market value of the whole property on the date of the gift.

The Court of Appeals for the First Circuit in Kaufman III, 687 F.3d at 26, explained that section 1.170A-14(g)(6), Income Tax Regs., was designed to prevent taxpayers from reaping a windfall if encumbered property was subsequently destroyed or condemned. Inconsistent with this purpose, Article VI.D, subparagraph (1), of petitioners' conservation easement violates section 1.170A-14(g)(6)(ii), Income Tax Regs., by providing petitioners (or petitioners' heirs) with a potential windfall in the event that a change of conditions extinguishes the conservation easement. For example, if the Internal Revenue Service denies petitioners' charitable contribution deduction for Federal income tax purposes for reasons other than valuation and the easement is extinguished in a subsequent judicial proceeding, the numerator used pursuant to Article VI.D, subparagraph (1), of the conservation easement will be zero, and MET and LPT will not receive a proportionate share of extinguishment proceeds.

Petitioners appear to argue on brief that the deduction referenced in the conservation easement was simply a method of determining the value of the easement. But there is no evidence of why this provision was in the conservation easement. Deductions for conservation easements can be denied for many reasons

unrelated to valuation. At the time the conservation easement was granted,

petitioners' deduction faced many hurdles that were unrelated to the value of the

easement.[13] Indeed, in this case respondent has made many arguments for

---

[13]In Graev v. Commissioner, 140 T.C. 377, 396-397 (2013), we stated:

There are multiple requirements in section 170 and the corresponding regulations that, if not followed, may lead to disallowance--and valuation is only one of them. For example, an easement contribution may be disallowed where--

• The donee fails to be a "qualified organization" described in section 170(h)(3).

• The property subject to the easement fails to be of a "historically important land area" or a "certified historic structure." Sec. 170(h)(4)(iv); see Turner v. Commissioner, 126 T.C. 299, 316 (2006).

• The taxpayer fails to contribute a "qualified real property interest". Sec. 170(a)(2); see Belk v. Commissioner, 140 T.C. 1 (2013).

• The easement fails to preserve conservation purposes "in perpetuity". Sec. 170(h)(5); see Carpenter v. Commissioner, T.C. Memo. 2012-1; Herman v. Commissioner, T.C. Memo. 2009-205.

• The parties fail to subordinate the rights of a mortgagee in the property "to the right of the qualified organization to enforce the conservation purposes of the gift in perpetuity." 26 C.F.R. sec. 1.170A-14(g)(2); see Mitchell v. Commissioner, 138 T.C. 324, 331-332 (2012).

(continued...)

disallowance that are not based on valuation.

In the event of extinguishment, if the deductions were disallowed, petitioners or their heirs could argue that petitioners never received a tax deduction and, therefore, MET and LPT would not be entitled to extinguishment proceeds. This argument is supported by the literal terms of the easement, and there is no evidence of a different intent. This would provide petitioners or their

---

[13](...continued)

•The taxpayer fails to "[a]ttach a fully complete appraisal summary * * * to the tax return". 26 C.F.R. sec. 1.170A-13(c)(2)(B). But see Kaufman v. Shulman, 687 F.3d 21, 28-30 (1st Cir. 2012), aff'g in part, vacating and remanding in part Kaufman v. Commissioner, 136 T.C. 294 (2011), and 134 T.C. 182 (2010).

•The appraisal fails to be a "qualified appraisal". 26 C.F.R. sec. 1.170A-13(c)(3); see Friedberg v. Commissioner, T.C. Memo. 2011-238.

•The appraiser fails to be a "qualified appraiser". 26 C.F.R. sec. 1.170A-13(c)(5); see Rothman v. Commissioner, T.C. Memo. 2012-218 (reserving the question on whether an appraiser was "qualified").

•The parties fail to record the easement or otherwise fail to effect "legally enforceable restrictions". 26 C.F.R. sec. 1.170A-14(g)(1); see Satullo v. Commissioner, T.C. Memo 1993-614, aff'd without published opinion, 67 F.3d 314 (11th Cir. 1995).

•The taxpayer fails to "[m]aintain records" necessary to substantiate the charitable contribution. 26 C.F.R. sec. 1.170A-13(c)(2)(C), Income Tax Regs.

heirs with a windfall and deprive the donees of their ability to use a share of the extinguishment proceeds for conservation purposes. See Kaufman III, 687 F.3d at 26. We conclude that Article VI.D, subparagraphs (1) and (2), of petitioners' conservation easement violates the requirements of section 1.170A-14(g)(6)(ii), Income Tax Regs., by not guaranteeing MET and LPT a proportionate share of extinguishment proceeds based on the fair market value of the conservation easement at the time of the gift. Because the purpose of petitioners' contribution is not protected in perpetuity, it does not qualify as a qualified conservation contribution, and therefore petitioners are not entitled to a carryforward charitable contribution deduction for the years in issue.

Petitioners argue that respondent ignores the last sentence of section 1.170A-14A(g)(6)(ii), Income Tax Regs., which provides an exception to the proportionality requirement if "state law provides that the donor is entitled to the full proceeds from the conversion without regard to the terms of the prior perpetual conservation restriction." According to petitioners, Maryland law requires that extinguishment proceeds be distributed to easement donors without regard to the conservation easement. Specifically, petitioners cite Md. Code Ann., Real Prop. sec. 12-104(g) (LexisNexis 2016), which provides:

(g) Land over which easement donated to Maryland Historical Trust or Maryland Environmental Trust.--If any easement in gross or other right to restrict use of land or any interest in land has been donated to the Maryland Historical Trust or the Maryland Environmental Trust, damages shall be awarded in <u>any condemnation proceedings</u> under this title to the fee owner and leasehold owner, as their interests may appear, and <u>shall be the fair market value of the land or interest in it, computed as though the easement or other right did not exist</u>. [Emphasis added.]

Petitioners are correct that Maryland law mandates that, with respect to an easement donated to MET, the extinguishment proceeds in any condemnation proceeding be "computed as though the easement or other right did not exist." <u>Id.</u> However, there are two problems with petitioners' position. First, by its own terms, Md. Code Ann., Real Prop. sec. 12-104(g) applies only to "the Maryland Historical Trust or [the] Maryland Environmental Trust." Petitioners' conservation easement provides both MET and LPT with coextensive rights in the subject property. While MET is specifically covered by Md. Code Ann., Real Prop. sec. 12-104(g), LPT is not mentioned. Thus, in the event that the conservation easement is judicially extinguished in a condemnation proceeding, MET's extinguishment proceeds would be controlled by State statute. However, LPT would still be entitled to proceed under the conservation easement whose terms fail the proportionality requirement of section 1.170A-14(g)(6)(ii), Income Tax Regs. The second problem with petitioners' argument is that Md. Code Ann.,

Real Prop. sec. 12-104 applies narrowly to condemnation proceedings, and section 1.170A-14(g)(6), Income Tax Regs., applies broadly to any "subsequent unexpected change in the conditions surrounding the property that is the subject of a donation * * * mak[ing] impossible or impractical the continued use of the property for conservation purposes". Although Maryland law would apply to MET in a condemnation proceeding, it would not apply to either MET or LPT in a extinguishment proceeding that was not based on condemnation (e.g., the destruction of the subject property or where the characteristics of the neighborhood render the conservation purpose impractical). For these reasons, Md. Code Ann., Real Prop. sec. 12-104 does not satisfy the State law exception in section 1.170A-14(g)(6), Income Tax Regs.

Petitioners also contend that respondent's rationale is "circular in nature", arguing that the disallowance of their charitable contribution deduction under section 1.170A-14(g)(6), Income Tax Regs., hinges on the possibility that respondent may disallow petitioners' deduction on another ground. This argument is unpersuasive. The regulatory requirements set forth in section 1.170A-14(g), Income Tax Regs., are designed to protect the conservation purpose of a conservation contribution and must be satisfied at the outset for a contribution to be deductible. Although section 1.170A-14(g)(6)(ii), Income Tax Regs., imposes

a technical requirement, it is a requirement intended to preserve the conservation purpose, and petitioners could have avoided this adverse outcome by strictly following the proportionality formula set forth in the regulation.  This Court is obligated to apply statutes as written and follow accompanying regulations when consistent therewith.  See Michaels v. Commissioner, 87 T.C. 1412, 1417 (1986).

Petitioners also argue that respondent "ignores the safe harbor from unlikely events" in section 1.170A-14(g)(3), Income Tax Regs.[14]  Petitioners emphasize that "[r]espondent has not cited to a single instance where a conservation easement actually has been extinguished, nor has [r]espondent offered any potential reasons why the Easement donated by [p]etitioners ever would be extinguished."  In Kaufman III, 687 F.3d at 27, the Court of Appeals for the First Circuit specifically agreed with our rationale in Kaufman II, 136 T.C. at 313, that "[o]ne does not satisfy the extinguishment provision [in section 1.170A-14(g)(6), Income Tax Regs.] * * * merely by establishing that the possibility of a change in conditions

---

[14]Sec. 1.170A-14(g)(3), Income Tax Regs., provides, in pertinent part:

(3) Remote future event.--A deduction shall not be disallowed under section 170(f)(3)(B)(iii) and this section merely because the interest which passes to, or is vested in, the donee organization may be defeated by the performance of some act or the happening of some event, if on the date of the gift it appears that the possibility that such act or event will occur is so remote as to be negligible.  * * *

triggering judicial extinguishment is unexpected." (Alteration in original.) To accept petitioners' argument would effectively nullify the proportionality requirement of section 1.170A-14(g)(6), Income Tax Regs., because, by its own terms, the regulation applies to "unexpected" changes in conditions, which likely encompass events that are "so remote as to be negligible". See sec. 1.170A-14(g)(3), Income Tax Regs. Thus, petitioners cannot circumvent the strict requirement of section 1.170A-14(g)(6), Income Tax Regs., by showing that the probability of extinguishment is so remote as to be negligible under section 1.170A-14(g)(3), Income Tax Regs.

III. Alternative Issues

Respondent raised various other issues, including the valuation of petitioners' conservation easement, petitioners' ownership percentages of the subject property at the time the conservation easement was granted to MET and LPT,[15] and whether petitioners' appraisal attached to their return was a qualified

---

[15]Respondent argues that, before executing the easement, Dr. Carroll had conveyed the subject property to himself, his wife, and his three minor children as tenants in common, and therefore "petitioners only had a 40% interest in the Property at the time they executed the Easement, thereby limiting any deduction to 40% of the deemed value of the donation." Thus, respondent in effect argues that, even if we accept petitioners' valuation of the easement, petitioners' conservation easement deduction should be limited to $480,000 (40% of the $1.2 million that petitioners claimed).

appraisal as required by section 1.170A-13(c)(3)(ii)(I), Income Tax Regs. Our decision, supra, that petitioners' conservation easement fails to satisfy the proportionality requirements of section 1.170A-14(g)(6)(ii), Income Tax Regs., resolves this case, and therefore we will not address the parties' other arguments.

IV. Section 6662(a) Accuracy-Related Penalties

In the notice of deficiency respondent determined that petitioners are liable for section 6662(a) accuracy-related penalties for 2006, 2007, and 2008 of $11,553.60, $20,754.20, and $3,555.40, respectively. Section 6662(a) and (b)(2) imposes a 20% accuracy-related penalty on any portion of an underpayment attributable to a substantial understatement of income tax. Section 7491(c) provides that the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). However, once the Commissioner meets his burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalty is inappropriate because of reasonable cause under section 6664. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

There is a substantial understatement of income tax for any taxable year if the amount of the understatement of income tax for the taxable year exceeds the

greater of 10% of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d)(1)(A). On their 2005 tax return petitioners claimed a $1.2 million charitable contribution deduction for their donation of a conservation easement on the subject property. A portion of that deduction was carried over to each of petitioners' 2006, 2007, and 2008 returns. We have concluded that petitioners are not entitled to a carryforward charitable contribution deduction for any of the years in issue, and therefore, their understatement of income tax for each of the years in issue exceeds the greater of 10% of the tax required to be shown on their return or $5,000. Thus, respondent has met his burden of production with respect to the section 6662(a) substantial understatement penalty.

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith. See Higbee v. Commissioner, 116 T.C. at 448. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess his or her tax liability. Id. Reliance on professional advice may constitute reasonable cause and good faith, but "it must

be established that the reliance was reasonable." Freytag v. Commissioner, 89 T.C. 849, 888 (1987), aff'd on other grounds, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991). We have previously held that a taxpayer must satisfy a three-prong test to be found to have reasonably relied on professional advice to negate a section 6662(a) accuracy-related penalty: (1) the adviser was a competent professional who had sufficient expertise to justify the reliance; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Petitioners argue that they had reasonable cause because their conservation easement deduction "was based on a qualified appraisal by a qualified appraiser, and the taxpayer made a good-faith investigation of the value of the contributed property." We agree with petitioners that their conservation easement deduction was based on an appraisal by a qualified appraiser. However, we have held that it is the language found in Article VI.D, subparagraph (1), of the conservation easement, not the valuation of the subject property, which caused the disallowance of petitioners' carryforward contribution deductions. Petitioners do not qualify for the section 6664(c)(1) reasonable cause exception because they have not shown

that they acted with reasonable cause and in good faith with respect to the protected-in-perpetuity requirement of section 1.170A-14(g)(6), Income Tax Regs. Dr. Carroll testified that he personally handled the conservation easement and did not consult with an attorney or other adviser.

The testimony and other evidence presented at trial demonstrate that Dr. Carroll is a highly educated medical school graduate and had previous experience with conservation easements. Although Dr. Carroll did hire Mr. Haile in 2005 to draft a gift deed for the subject property, Mr. Haile is not a tax attorney and does not answer tax-related questions or give tax advice. Petitioners offered no evidence which would explain why the terms of the conservation easement varied from the requirements of section 1.170A-14(g)(6), Income Tax Regs., nor do they clarify why Dr. Carroll failed to seek competent advice from a tax attorney or other adviser to ensure the conservation easement's compliance with pertinent regulations. In the light of Dr. Carroll's high level of sophistication and experience with conservation easements, we conclude that petitioners have not demonstrated that they acted with reasonable cause and in good faith in not seeking competent tax advice regarding the conservation easement.[16]

---

[16]Petitioners concede that they failed to report: (1) $2,545 of taxable State refunds, credits, or offsets for 2006; (2) $8,496 of ordinary dividends, $6,000 of

(continued...)

Accordingly, we hold that petitioners are liable for accuracy-related penalties under section 6662(a).

Substantial and/or Gross Valuation Misstatement Penalties

Respondent did not determine an accuracy-related penalty under section 6662(e) or (h) in the notice of deficiency[17] or in his answer. In his pretrial memorandum respondent asserts that petitioners are liable for substantial and/or gross valuation misstatement penalties. Respondent also indicates in his pretrial memorandum that he anticipates making a motion that the pleadings conform to

---

[16](...continued)
rental income, $7,397 of qualified dividends, and $107,227 of long-term capital gains for 2007; and (3) $14,826 of rental income, $958 of qualified dividends, and $4,944 of interest income for 2008. Respondent concedes that petitioners are entitled to additional capital losses of $30,772 for 2008.

[17]On Form 4089, Notice of Deficiency--Waiver, attached to the notice of deficiency, respondent states:

Since all or part of the underpayment of tax for the taxable years ended December 31, 2006, December 31, 2007, and December 31, 2008 is attributable to one or more of (1) negligence or disregard of rules or regulations, (2) any substantial understatement of income tax, or (3) any substantial valuation overstatement, an addition to the tax is charged as provided by Section 6662(a) of the Internal Revenue Code. The penalty is twenty (20) percent of the portion of the underpayment of tax attributable to each component of this penalty. In addition, interest is computed on this penalty from the due date(s) of the returns, including any extensions.

the facts to increase the accuracy-related penalty from 20% to 40%; however, respondent never filed such motion.

Rule 41(a) provides that, when more than 30 days have passed after an answer has been served, "a party may amend a pleading only by leave of Court or by written consent of the adverse party, and leave shall be given freely when justice so requires." Whether a party may amend his pleading lies within the sound discretion of the Court. Estate of Quick v. Commissioner, 110 T.C. 172, 178 (1998). In determining whether to allow a proposed amendment, the Court must consider, among other things, whether an excuse for the delay exists and whether the opposing party would suffer unfair surprise, substantial inconvenience, or other prejudice. See Foman v. Davis, 371 U.S. 178, 182 (1962). The Court looks with disfavor on untimely requests for amendment that, if granted, would prejudice the other party. See, e.g., Farr v. Commissioner, 11 T.C. 552, 566-567 (1948), aff'd sub nom. Sloane v. Commissioner, 188 F.2d 254 (6th Cir. 1951).

Respondent has not explained his delay in asserting the section 6662(e) and (h) penalties. In his pretrial memorandum respondent indicates that he anticipates filing a motion to amend the pleadings to assert the substantial and/or gross valuation misstatement penalties. Without further explanation respondent argues

in his pretrial memorandum that petitioners are liable for substantial and/or gross valuation misstatement penalties. However, at no time did respondent file a motion with this Court requesting leave to amend his answer as required by our Rules. Accordingly, we will not consider respondent's assertion of substantial and/or gross valuation misstatement penalties under section 6662(e) or (h).

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.