# United States Tax Court

T.C. Memo. 2022-61

MORGAN RUN PARTNERS, LLC, OVERFLOW MARKETING, LLC,
TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

———————

Docket No. 8669-20.                      Filed June 14, 2022.

———————

*Vivian D. Hoard*, for petitioner.

*John T. Arthur, Christopher D. Bradley, Marissa J. Savit*, and *Alexandra E. Nicholaides*, for respondent.


MEMORANDUM OPINION

LAUBER, *Judge*: This is a syndicated conservation easement case. The Internal Revenue Service (IRS or respondent) disallowed the charitable contribution deduction claimed for the easement by Morgan Run Partners, LLC (Morgan), and determined penalties. Currently before the Court is respondent's Motion for Partial Summary Judgment. Respondent contends that the deduction was properly disallowed because the easement's conservation purpose was not "protected in perpetuity." *See* § 170(h)(5)(A).[1] Separately, respondent contends that the IRS complied with the requirements of section 6751(b)(1) by securing timely supervisory approval of the penalties. We will deny the Motion

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*2]** on the section 170(h)(5)(A) question but grant it with respect to section 6751(b)(1).

## *Background*

The following facts are derived from the pleadings, the parties' motion papers, and the exhibits and declarations attached thereto. They are stated solely for purposes of deciding respondent's Motion and not as findings of fact in this case. *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

Morgan is an Alabama limited liability company organized in May 2016. It is treated as a TEFRA partnership for Federal income tax purposes, and petitioner Overflow Marketing, LLC, is its tax matters partner.[2] Morgan had its principal place of business in Alabama when the Petition was timely filed.

In November 2016 Greenwood Partners, LLC, acquired a 94% membership interest in Morgan by contributing to it roughly 232 acres of land (Property) in Jefferson County, Alabama. In December 2016 Morgan granted to the National Farmer's Trust (Trust or grantee) a conservation easement over the Property. The deed of easement was recorded on December 20, 2016.

The easement deed states that it "gives rise to a real property right and interest." Article 6.1 provides that the fair market value (FMV) of the Trust's right and interest "shall be equal to the difference between (a) the [FMV] of the Conservation Area as if not burdened by th[e] Conservation Easement, and (b) the [FMV] of the Conservation Area burdened by th[e] Conservation Easement." The deed thus defines the Trust's property right as equal to the FMV of the easement, but it does not specify the point in time at which this calculation is to be made.

The deed does not address the possibility that the easement might be extinguished in a future judicial proceeding. Rather, article 6.5 expresses the parties' intention that "no change in conditions . . . will at any time or in any event result in the extinguishment of any of the covenants, restrictions or easements" specified in the deed. Article 6.7 acknowledges "that circumstances could arise which would justify the modification of certain of the restrictions" set forth in the deed. In that

---

[2] Before its repeal, TEFRA (the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71) governed the tax treatment and audit procedures for many partnerships, including Morgan.

**[*3]** event article 6.7 specifies that the Trust and owner (viz., Morgan or its successor) "shall mutually have the right, in their sole discretion, to agree to amendments to [the deed] which are not inconsistent with the Conservation Purposes." This procedure is subject to the proviso that the Trust shall have no power to agree to any amendment "that would result in this Conservation Easement failing to qualify as a qualified contribution under Section 170(h) of the Internal Revenue Code."

Article 6.6 addresses the possibility that the easement restrictions might be abrogated "by exercise of eminent domain." In that event the Trust and owner "shall join in appropriate actions . . . to recover the full value of the taking and all incidental or direct damages." Upon such recovery, "[t]he Trust shall be entitled the Trust's Proportionate Share of the recovered proceeds," but the term "Proportionate Share" is not defined. In connection with any eminent domain action, "[a]ll expenses incurred by Owner and the Trust reasonable attorneys' fees . . . shall be paid out of the recovered proceeds."

Morgan timely filed Form 1065, U.S. Return of Partnership Income, for its 2016 tax year. On that return it claimed a charitable contribution deduction of $26 million for the donation of the easement. In support of this supposed value Morgan relied on an appraisal prepared by Ronald Foster.

The IRS selected Morgan's return for examination and assigned the case to Revenue Agent (RA) Karen Alibozek. In September 2019, as the examination neared completion, RA Alibozek recommended assertion of penalties against Morgan under sections 6662 and 6662A. Her recommendations to this effect were set forth in a civil penalty approval form. RA Alibozek's group manager, Margaret McCarter, digitally signed the form on September 17, 2019. Ms. McCarter has submitted a declaration confirming that she supervised RA Alibozek's work during the examination.

On October 21, 2019, RA Alibozek mailed petitioner a packet of documents, including Letter 1807, that set forth her proposed adjustments and penalty recommendations. More than two months later, on January 10, 2020, the IRS issued petitioner a notice of final partnership administrative adjustment (FPAA), including a Form 886–A, Explanation of Items, disallowing the charitable contribution deduction in full and determining penalties. As an alternative, the FPAA determined that any allowable charitable contribution deduction could not exceed

**[\*4]** $989,357.  Petitioner timely petitioned this Court for readjustment of the partnership items.

*Discussion*

A.    *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials.  *See FPL Grp., Inc. & Subs. v. Commissioner*, 116 T.C. 73, 74 (2001).  We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law.  *See* Rule 121(b); *Sundstrand Corp.*, 98 T.C. at 520.  In deciding whether to grant partial summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party.  *Sundstrand Corp.*, 98 T.C. at 520.  Where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial.  Rule 121(d).

B.    *Analysis*

1.    *"Protected in Perpetuity"*

The Code generally restricts a taxpayer's charitable contribution deduction for the donation of "an interest in property which consists of less than the taxpayer's entire interest in such property."  § 170(f)(3)(A).  But there is an exception for a "qualified conservation contribution."  § 170(f)(3)(B)(iii), (h)(1).  For the donation of an easement to be a "qualified conservation contribution," the conservation purpose must be "protected in perpetuity."  § 170(h)(1)(C), (5)(A); *see TOT Prop. Holdings, LLC v. Commissioner*, 1 F.4th 1354, 1362 (11th Cir. 2021); *PBBM-Rose Hill, Ltd. v. Commissioner*, 900 F.3d 193, 201 (5th Cir. 2018).

In 1986 the Department of the Treasury issued final rules for determining whether this "protected in perpetuity" requirement is met.  Of importance here are the rules governing the mandatory division of proceeds in the event the property is sold following extinguishment of the easement.  *See* Treas. Reg. § 1.170A-14(g)(6).  The regulations recognize that "a subsequent unexpected change in the conditions surrounding the [donated] property . . . can make impossible or impractical the continued use of the property for conservation purposes."  *Id.* subdiv. (i).  Despite

**[\*5]** that possibility, "the conservation purpose can nonetheless be treated as protected in perpetuity if the restrictions are extinguished by judicial proceeding" and the easement deed ensures that the charitable grantee, following sale of the property, will receive a proportionate share of the proceeds and use those proceeds consistently with the conservation purposes underlying the original gift. *Ibid.* In effect, the "perpetuity" requirement is deemed satisfied because the sale proceeds replace the easement as an asset deployed by the donee "exclusively for conservation purposes." § 170(h)(5)(A).

Treasury Regulation § 1.170A-14(g)(6)(i) sets forth a formula for determining the proportionate share the grantee must receive upon any extinguishment of the easement, providing that the grantee must be entitled to proceeds "determined under paragraph (g)(6)(ii)." That paragraph, captioned "Proceeds," provides in part as follows:

> [F]or a deduction to be allowed under this section, at the time of the gift the donor must agree that the donation of the perpetual conservation restriction gives rise to a property right, immediately vested in the donee organization, with a fair market value that is at least equal to the proportionate value that the perpetual conservation restriction at the time of the gift, bears to the value of the property as a whole at that time. . . . For purposes of this paragraph . . . , that proportionate value of the donee's property rights shall remain constant. Accordingly, when a change in conditions give rise to the extinguishment of a perpetual conservation restriction under paragraph (g)(6)(i) of this section, the donee organization, on a subsequent sale, exchange, or involuntary conversion of the subject property, must be entitled to a portion of the proceeds at least equal to that proportionate value of the perpetual conservation restriction, unless state law provides that the donor is entitled to the full proceeds . . . .

In other words the grantee's proportionate share is to be determined by a fraction, the numerator of which is "the fair market value of the conservation easement on the date of the gift," and the denominator of which is "the fair market value of the property as a whole on the date of the gift." *Carroll v. Commissioner*, 146 T.C. 196, 216 (2016); *see also PBBM-Rose Hill*, 900 F.3d at 207.

**[\*6]** Respondent contends that the deed at issue violates the "judicial extinguishment" regulation. But this deed, unlike most easement deeds the Court has examined, does not explicitly address the subject of judicial extinguishment. Rather, it expresses the parties' intention that "no change in conditions . . . will at any time or in any event result in the extinguishment" of the easement. Should circumstances arise that would justify modifying certain restrictions, the deed envisions that Morgan and the Trust would agree to appropriate amendments, with the proviso that the Trust would have no power to agree to any amendment that would violate section 170(h). Given this text, petitioner has a reasonable argument that the deed violates neither the "judicial extinguishment" regulation nor the statutory requirement that the conservation purpose be "protected in perpetuity." *See* § 170(h)(5)(A).

The deed does address, in article 6.6, the possibility that the restrictions might be abrogated "by exercise of eminent domain." Referring to article 6.1 of the deed, respondent urges that the Trust would then be limited to receiving proceeds equal to the value of the easement when initially granted, with no protection against inflation. That outcome would be at odds with the "protected in perpetuity" requirement. *See, e.g.*, *R.R. Holdings, LLC v. Commissioner*, T.C. Memo. 2020-22, 119 T.C.M. (CCH) 1136, 1139. But article 6.6 says that in the event of eminent domain the Trust shall be entitled, not to a fixed historical value, but to "the Trust's Proportionate share of the recovered proceeds." Oddly, the term "Proportionate Share," though seemingly intended as a term of art, is not defined in the deed. This creates an ambiguity that would need to be resolved under principles of Alabama law, which might include parol evidence. *See Moore v. Pa. Castle Energy Corp.*, 89 F.3d 791, 795–96 (11th Cir. 1996).

Respondent also faults the deed for providing that, in the event of an eminent domain recovery, "[a]ll expenses incurred by Owner and the Trust reasonable attorneys' fees . . . shall be paid out of the recovered proceeds." But as we have previously noted, "[i]t is not necessarily unreasonable for a deed to provide that prior claims [or expenses] may be paid from sale proceeds." *Coal Prop. Holdings, LLC v. Commissioner*, 153 T.C. 126, 145 n.5 (2019). What would be unreasonable (and violative of the regulation) would be a requirement that *all* claims and expenses of sale be paid out of *the Trust's share* of the proceeds. *See ibid.* Here, the deed provides that the proceeds will be reduced by both parties' expenses. It is not obvious that this violates the "judicial extinguishment" regulation or the statutory requirement that the conservation purpose be "protected in perpetuity." *See* § 170(h)(5)(A). We will accordingly

[*7] deny respondent's Motion with respect to the "protected in perpetuity" requirement.

### 2. *Penalty Approval*

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." In a TEFRA case such as this, supervisory approval generally must be obtained before the IRS issues an FPAA to the partnership. *See Palmolive Bldg. Inv'rs, LLC v. Commissioner*, 152 T.C. 75, 83 (2019). If supervisory approval is obtained by that date, the partnership must establish that the approval was untimely, i.e., "that there was a formal communication of the penalty before the proffered approval" was secured. *See Frost v. Commissioner*, 154 T.C. 23, 35 (2020).[3]

Respondent has supplied a copy of the civil penalty approval form by which RA Alibozek recommended assertion of penalties against Morgan. RA Alibozek's immediate supervisor, Ms. McCarter, signed the penalty approval form on September 17, 2019. The Letter 1807 notifying petitioner of the proposed penalties was issued on October 21, 2019. The FPAA with enclosed Form 886–A was issued on January 10, 2020. Because RA Alibozek secured supervisory approval from Ms. McCarter before either of those communications was made to petitioner, the approval was timely. *See Frost*, 154 T.C. at 35.[4]

Petitioner does not allege that the IRS formally communicated to Morgan, before September 17, 2019, its decision to assert penalties. Petitioner nonetheless argues that there is a dispute of fact as to whether the IRS issued some sort of penalty communication before that date. Petitioner asserts that the answer to this question is currently "unknowable" and must be determined by trial.

We disagree. Respondent has supplied documentary evidence confirming that RA Alibozek's immediate supervisor approved the

---

[3] Although the Commissioner does not bear a burden of production with respect to penalties in a partnership-level proceeding, a partnership may raise section 6751(b) as an affirmative defense. *See Dynamo Holdings Ltd. P'ship v. Commissioner*, 150 T.C. 224, 236–37 (2018).

[4] Because RA Alibozek secured supervisory approval on September 17, 2019, we need not decide whether the "initial determination" to assert penalties was embodied in the Letter 1807 (dated October 21, 2019) or the FPAA (dated January 10, 2020).

[*8] assertion of penalties on September 17, 2019, well before the IRS formally communicated its penalty determinations to petitioner. As we have repeatedly held, the statute's timeliness inquiry "turns on the timing of the first 'formal written communication' to the taxpayer against whom the penalties are being asserted." *Oxbow Bend, LLC v. Commissioner*, T.C. Memo. 2022-23, at *8 (quoting *Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 10 (2020)). We have regularly decided this question on summary judgment, on the basis of IRS records and declarations from relevant IRS officers. *See, e.g.*, *Sand Inv. Co. v. Commissioner*, 157 T.C. 136 (2021); *Long Branch Land, LLC v. Commissioner*, T.C. Memo. 2022-2; *Excelsior Aggregates, LLC v. Commissioner*, T.C. Memo. 2021-125.[5]

If the IRS issued Morgan or its representatives any "formal written communication" of penalties before September 17, 2019, they would presumably have that document in their possession. Petitioner does not allege that Morgan received any such document or that any other type of formal penalty communication occurred. There being no genuine dispute of material fact on this point, we will grant respondent's Motion with respect to penalty approval. *See* Rule 121(d) (providing that a party opposing summary judgment may not rely on "mere allegations or denials" but "must set forth specific facts," including facts established "by affidavits or declarations").

To reflect the foregoing,

*An order will be issued granting in part and denying in part respondent's Motion for Partial Summary Judgment.*

---

[5] In *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020), the U.S. Court of Appeals for the Ninth Circuit considered the timeline for obtaining supervisory approval of "assessable penalties," which are not subject to deficiency or TEFRA procedures. The court held that, for an assessable penalty, supervisory approval is timely if secured before the penalty is assessed or "before the relevant supervisor loses discretion whether to approve the penalty assessment." *Id.* at 1074. The court suggested that, in a deficiency or TEFRA case such as this, the deadline for securing supervisory approval would be the issuance of the notice of deficiency or the FPAA. *Id.* at 1071 n.4. If that analysis were adopted here, supervisory approval of the penalties was clearly timely: Approval was secured in September 2019, and the FPAA was not issued until January 2020.